THE STATE OF OHIO, APPELLANT, *v.* BRESSON, APPELLEE.

[Cite as State *v.* Bresson (1990), 51 Ohio St. 3d 123.]

(No. 89-611—Submitted March 7, 1990—Decided May 30, 1990.)

124

*Ronald J. O'Brien,* city attorney, *James J. Fais,* city prosecutor, and *Thomas K. Lindsey,* for appellant.

*Carl T. Wolfrom,* for appellee.

*Isaac, Brant, Ledman & Becker* and *David H. Meade,* urging reversal for *amicus curiae,* Mothers Against Drunk Driving.

ALICE ROBIE RESNICK, J. The HGN test is used by an increasing number of law enforcement agencies across the country as an additional means to determine probable cause as to whether a person is operating a vehicle under the influence of alcohol.

See, generally, 1 Erwin, Defense of Drunk Driving Cases (3 Ed. 1989), Section 8.26; Annotation (1988), 60 A.L.R. 4th 1129, 1131; Goding & Dobie, Gaze Nystagmus and Blood Alcohol (July 1986), 96 Laryngoscope 713; see, also, Belton, Lateral Nystagmus: A Specific Diagnostic Sign of Ethyl Alcohol Intoxication (1987), 100 New Zealand Med. J. 534. "Nystagmus" has been defined as a "rhythmic to-and-fro oscillation of the eyes[,]" or as an involuntary jerking of the eyeball. Walsh, Neuro-Ophthalmology: Clinical Signs and Symptoms (1978) 239; The Merck Manual of Diagnosis and Therapy (15 Ed. 1987) 1359; Dorland's Illustrated Medical Dictionary (26 Ed. 1981) 910. "Horizontal gaze nystagmus" refers to a jerking of the eyes as they gaze, or look, to one side. See Erwin, *supra,* at 8-51. It has been shown that there is a correlation between blood-alcohol concentration ("BAC") and nystagmus. See Goding & Dobie, *supra;* Belton, *supra;* Wilkinson, Kime & Purnell, Alcohol and Human Eye Movement (1974), 97 Brain 785; Development and Field Test of Psychophysical Tests for DWI Arrest (Mar. 1981), U.S. Department of Transportation, National Highway Traffic Safety Administration; Good & Augsburger, Use of Horizontal Gaze Nystagmus as a Part of Roadside Sobriety Testing (1986), 63 Am. J. Optometry & Physiological Optics 467.[3]

According to a test manual devised by the United States Department of Transportation for use by law enforcement agencies, the HGN test is the single most accurate field test to use in determining whether a person is alcohol impaired. U.S. Department of Transportation, National Highway Safety Administration, Improved Sobriety Testing (1984) 4.[4] Although many people will have some nystagmus

---

[3] However, horizontal gaze nystagmus can occur for reasons other than ingestion of alcohol. Some of these reasons are seizure, medications, phencyclidine ("PCP"), barbiturates and other depressants. Additionally, a large disparity between test results of the right and left eyes may indicate brain damage. See Improved Sobriety Testing, *supra,* at 4.

[4] In a laboratory test, four hundred forty-one subjects had BAC levels ranging from 0.10 to 0.19 percent. Their performance on three sobriety field tests — the gaze nystagmus test, the walk-and-turn test, and the one-leg stand test — was scored by police officers. The gaze nystagmus test was shown to be the most accurate single test in determining whether a person's alcohol concentration was above or below 0.10 percent. The accuracy of these tests were: gaze nystagmus, seventy-seven percent; walk-and-turn, sixty-eight percent; one-leg stand, sixty-five percent; and combined gaze nystagmus and walk-and-turn, eighty percent.

Additionally, a field evaluation was performed by using police officers who stopped more than one thousand five hundred drivers for suspicion of driving while under the influence. The evaluation showed the following accuracy ratings: gaze nystagmus, eighty-two percent; walk-and-turn, eighty percent; one-leg stand, seventy-eight percent; and combined gaze nystagmus and walk-and-turn, eighty-three percent. Improved Sobriety Testing, *supra,* at 1. See, also, U.S. Department of Transportation, National Highway Traffic Safety Administration, Alcohol and Highway Safety 1984: A Review of the State of the Knowledge (1985) 55-56.

It has been stated that the HGN test is especially useful in detecting drivers who have a BAC level between 0.10 and 0.14 percent. Frequently, traditional field sobriety tests are not sensitive enough to detect a driver who has a BAC level below .14 percent. See *State* v. *Superior Court, supra,* at 272, 718 P. 2d at 174. Traditional field sobriety tests such as the one-leg stand and walk-and-turn tests "*** give the of-

as their eyes move to an extreme side, as people become intoxicated, the jerking becomes not only more frequent and pronounced but it also occurs at an earlier angle. See Erwin, *supra,* at 8-51.

The HGN test is relatively easy to administer. The driver taking the HGN test usually is asked to focus on a "stimulus" (such as a pen) held in an officer's hand at the driver's eye level approximately six to eight inches away. The officer will then move the stimulus gradually out of the driver's field of vision toward the driver's ear. Because it has been shown that the onset of the angle of nystagmus at less than forty-five degrees indicates the presence of alcohol, the officer watches each eye to determine whether nystagmus occurs at an angle less than forty-five degrees. See *State v. Superior Court* (1986), 149 Ariz. 269, 271, 718 P. 2d 171, 173; Development and Field Test of Psychophysical Tests for DWI Arrests, *supra.* Each eye is tested separately, although the suspect performs the HGN test binocularly. See Good & Augsburger, *supra,* at 469.

According to the test manual devised by the United States Department of Transportation, an officer administering the HGN test observes the driver's eyes to detect the following three signs of intoxication:

"(1) The jerking of the eyes occurs much sooner. That is, the more intoxicated a person becomes, the less that he has to move his eyes to the side in order for the jerking to occur.

"(2) If you have a suspect move his eyes as far to the side as possible, you can estimate in a general way the extent of intoxication. The greater the alcohol impairment, the more distinct the nystagmus will be in the extreme gaze position.

"(3) If the suspect is intoxicated, he cannot follow a slowly moving object smoothly with his eyes." Improved Sobriety Testing, *supra,* at 3.

A person may receive up to six points on the HGN test. Specifically, each eye is tested to determine (1) whether the angle of onset of nystagmus is less than forty-five degrees; (2) whether nystagmus, when the eye is moved as far as possible to one extreme, is moderate or distinct; and (3) whether the eye can follow a moving object smoothly. A score of four or more points indicates a BAC level above .10 percent. Using these criteria, an officer should be able to correctly determine seventy-seven percent of the time whether a person taking the test is under the influence of alcohol or sober. When the HGN test is used in conjunction with the walk-and-turn field sobriety test, an officer's ability to detect whether a driver is under the influence of alcohol is improved. See Improved Sobriety Testing, *supra,* at 4.

In the instant case, appellee had objected to Trooper Click's testimony regarding the HGN test. The trial court overruled this objection, stating that the test had been accepted by the courts.

The court of appeals found that admission of Trooper Click's testimony about the HGN test was improper

---

ficer an indication of the suspect's condition. However, to some degree the results of these tests can be controlled voluntarily by the suspect. Performance can improve with practice and the test results may vary depending upon the suspect's drinking habits, physical stature, and natural coordination.

"Gaze nystagmus testing is a field sobriety test that cannot be controlled voluntarily by the suspect. * * *" Good & Augsburger, *supra,* at 469.

because "evidence regarding the scientific principles underlying and establishing the validity of the HGN test are [sic] a prerequisite to its admission. Since the prosecution * * * did not present expert testimony to establish the validity of the HGN test and the scientific principles underlying it, the trial court erred in allowing it into evidence. * * *"

This court has not previously addressed this issue. However, the appellant argues that a properly trained law enforcement officer is competent to testify as to a person's performance of the HGN test without expert testimony to establish the scientific foundation of the test. A review of courts of appeals decisions in this state on this issue establishes that a majority of appellate courts has admitted testimony by law enforcement officers concerning this test. The appellate courts generally have held that the HGN test is similar to other field sobriety tests and is admissible without expert testimony. See, *e.g., State v. Nagel, supra; State v. Welday* (Sept. 27, 1989), Medina App. No. 1793, unreported; *State v. Brug, supra; State v. Earley, supra; State v. Hintz, supra; State v. Lewis* (Apr. 29, 1986), Seneca App. No. 13-84-21, unreported.

There is a split of opinion in other states concerning this issue. Some jurisdictions have held that the HGN test is a scientific test, which requires expert testimony regarding the test's scientific reliability and acceptance. See, *e.g., State v. Barker* (W. Va. 1988), 366 S.E. 2d 642; *State v. Reed* (1987), 83 Ore. App. 451, 732 P. 2d 66; *Commonwealth v. Miller* (Pa. Super. 1987), 532 A. 2d 1186; *State v. Borchardt* (1986), 224 Neb. 47, 395 N.W. 2d 551. Other jurisdictions have held that evidence of a HGN test is admissible so long as a proper foundation is laid as to the techniques used and the officer's ability to use it. See, *e.g., State v. Superior Court, supra.* See, also, *State v. Clark* (Mont. 1988), 762 P. 2d 853. In a recent Supreme Court of Iowa decision, the court, relying on *State v. Nagel, supra,* held that some of the uncertainty surrounding the HGN test might stem from its "pretentiously scientific name." *State v. Murphy* (Iowa 1990), 451 N.W. 2d 154, 156. The court held that "* * * testimony by a properly trained police officer with respect to the administration and results of the horizontal gaze nystagmus test is admissible without need for further scientific evidence." *Id.* at 158. See, also, *State v. Edman* (Iowa 1990), 452 N.W. 2d 169.

In *State v. Superior Court, supra,* the Supreme Court of Arizona held that "* * * in the hands of a trained officer the [HGN] test is reasonably trustworthy and may be used to help establish probable cause to arrest. * * *" *Id.* at 276, 718 P. 2d at 178. It also held, after reviewing testimony given at an evidentiary hearing as well as pertinent literature on the subject, that the HGN test is reliable and that "* * * HGN occurs in conjunction with alcohol consumption; * * * its onset and distinctness are correlated to BAC; * * * and officers can be trained to observe these phenomena sufficiently to estimate accurately whether BAC is above or below .10 percent. We therefore hold that, with proper foundation as to the techniques used and the officer's ability to use it * * *, testimony of defendant's nystagmus is admissible on the issue of a defendant's blood alcohol level as would be other field sobriety test results on the question of the accuracy of the chemical analysis." (Citation omitted.) *Id.* at 279, 718 P. 2d at 181. "* * * It is admissible * * * also, as evidence that the driver is 'under the

influence.' * * *'' *Id.* at 280, 718 P. 2d at 182.[5]

We find that the HGN test has been shown to be a reliable indicator of BAC levels. Accordingly, results of this test are admissible so long as the proper foundation has been shown both as to the officer's training and ability to administer the test and as to the actual technique used by the officer in administering the test.

In this case the evidence shows that such a foundation was established. Trooper Click testified that he had received five days of training regarding the HGN test and described the methods he used in testing and evaluating appellee's performance on the HGN test. His testimony concerning what he looked for when administering the test corresponds to the testing methods devised by the United States Department of Transportation. Trooper Click testified that:

"The horizontal gaze nystagmus and the lateral horizontal gaze nystagmus is [*sic*] used to refer to a test in which a person's eyes are observed following stimulus, either a penlight, flashlight, ballpoint pen, any type of object, even a finger.

"In this test, a person is asked to hold their head steady. They're asked to watch an object, which is held approximately six to eight inches in front of them. I personally always use a ballpoint pen.

"The pen is held up in front of them. They are asked to watch the object, follow the object as it moves in a horizontal fashion without moving their head, only moving their eyes.
"* * *

"We were trained to watch for three characteristics when giving this test. The three things we're looking for is [*sic*] known as distinct nystagmus prior to 45 degrees. That is the approximate point of 45 degrees where you begin to see a jerky motion, a side-to-side motion of a person's eye.

"We're also trained to look for distinct nystagmus at maximum deviation.
"* * *

"What that means is, the point where a person can look farthest to the side, moving their eyes only, not their head. That is considered maximum deviation, as far from the middle as a person can look.

"We're looking for a distinct nystagmus or a distinct jerky motion of the eye at that point.
"* * *

"We have been instructed and trained * * * that a person who has consumed alcohol will exhibit these signs, as well as a lack of what we call smooth pursuit.
"* * *

"The smooth pursuit is the ability of the eye to follow an object in a smooth, fluid motion.

"We have been instructed, and I have observed, persons who have consumed alcohol, instead of following the object in a smooth, fluid motion, their eyes move like they're clicking along, just at intervals."

When asked specifically about appellee's performance on the HGN test, Trooper Click testified:

"Mr. Bresson was sitting in the front seat of the patrol car with me. He was not handcuffed. I held the ball-

---

[5] The court in *State* v. *Superior Court, supra,* at 279, 718 P. 2d at 181, also determined that the HGN test met the requirements for admission of evidence based on a scientific principle, set forth in *Frye* v. *United States* (D.C. Cir. 1923), 293 F. 1013. This court, however, has never adopted the *Frye* test. See *State* v. *Williams* (1983), 4 Ohio St. 3d 53, 4 OBR 144, 446 N.E. 2d 444.

point pen. * * * I held it up in front of Mr. Bresson, asked him if he could see the very end of it. I asked him to follow the pen in a horizontal fashion, side to side, without moving his head.

"* * *

"Of the six points we were looking for, Mr. Bresson exhibited all six points: The lack of smooth pursuit, the distinct nystagmus prior to 45 degrees, and distinct nystagmus at maximum deviation."[6]

The trial court has broad discretion in admitting evidence based on scientific processes. See *United States v. Traficant* (N.D. Ohio 1983), 566 F. Supp. 1046. Its ruling on admission or exclusion of evidence will not be overturned absent a showing of an abuse of discretion. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. * * *" (Citations omitted.) *State* v. *Adams* (1980), 62 Ohio St. 2d 151, 157, 16 O.O. 3d 169, 173, 404 N.E. 2d 144, 149. We cannot say that the trial court abused its discretion in allowing Trooper Click to testify as to the HGN test. We hold that the HGN test has been shown to be a reliable test, especially when used in conjunction with other field sobriety tests and an officer's observations of a driver's physical characteristics, in determining whether a person is under the influence of alcohol. The HGN test cannot be compared to other scientific tests, such as a polygraph examination, since no special equipment is required in its administration. Thus the

only requirement prior to admission is the officer's knowledge of the test, his training, and his ability to interpret his observations. The admission of the results of the HGN test is no different from any other field sobriety test, such as finger-to-nose, walk-and-turn, or one-leg stand.

Although not an issue in the instant case, we hasten to add that although results on an HGN test may be admissible at trial by a properly trained officer, such an officer may not testify as to what he or she believes a driver's actual or specific BAC level would be, based solely on the HGN test results. "* * * Such a use of HGN test results would raise a number of due process problems different from those associated with the chemical testing of bodily fluids. The arresting officer's 'reading' of the HGN test cannot be verified or duplicated by an independent party. * * * The test's recognized margin of error provides problems as to criminal convictions which require proof of guilt beyond a reasonable doubt. The circumstances under which the test is administered at roadside may affect the reliability of the test results. Nystagmus may be caused by conditions other than alcohol intoxication. And finally, the far more accurate chemical testing devices are readily available." *State* v. *Superior Court, supra,* at 279, 718 P. 2d at 181. See, also, *People* v. *Dakuras* (1988), 172 Ill. App. 3d 865, 527 N.E. 2d 163; *State, ex rel. McDougall,* v. *Ricke* (1989), 161 Ariz. 462, 778 P. 2d 1358; *State* v. *Barker, supra,* at 646.

---

[6] Trooper Click also administered four other field sobriety tests. As to appellee's performance on the one-leg stand test, Trooper Click stated that appellee swayed from side to side and put his foot down once. Trooper Click further testified that while performing the walk-and-turn test, appellee once stopped in order to regain his balance and lost his balance when turning around. Appellee was able to do the finger-to-nose test, but swayed from side to side while doing it. Appellee also recited the alphabet correctly, albeit with some slurring in his speech.

Accordingly, a properly qualified officer may testify at trial regarding a driver's performance on the HGN test as to the issues of probable cause to arrest and whether the driver was operating a vehicle while under the influence of alcohol. See R.C. 4511.19 (A)(1). However, such testimony may not be admitted to show what the exact alcohol concentration level of the driver was for purposes of demonstrating a violation of R.C. 4511.19(A)(2), (3), or (4).

The judgment of the court of appeals is reversed and the judgment of the trial court is reinstated.

*Judgment reversed.*

MOYER, C.J., KOEHLER, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

RICHARD N. KOEHLER, J., of the Twelfth Appellate District, sitting for SWEENEY, J.