The STATE of Ohio, Appellant,

v.

SCOTT, Appellee.

[Cite as *State v. Scott* (1992), 79 Ohio App.3d 77.]

Court of Appeals of Ohio,
Logan County.

No. 8–91–10.

Decided March 31, 1992.

*William T. Goslee,* Chief City Prosecutor, for appellant.

*Thomas A. Roof,* for appellee.

---

HADLEY, Presiding Judge.

This is an appeal by the plaintiff-appellant state of Ohio ("state") from a judgment of the Bellefontaine Municipal Court, entered May 16, 1991, dismissing the charge of driving under the influence of alcohol against defendant-appellee Terry L. Scott ("defendant") for lack of probable cause to arrest.

On February 17, 1991, at approximately 2:10 a.m., an officer observed a vehicle that was stopped on U.S. Highway 68. The vehicle was partially pulled off to the right side of the road, apparently as far off as possible without becoming stuck in the snow.

As the officer stopped and approached the vehicle he noticed that the driver's door was open, the engine was running and that the defendant, who was sitting in the driver's seat, was vomiting. The officer asked the defendant if he was going to be okay and he responded, "we're having some trouble driving in this snow." The officer testified that at that time, he noticed a slur in the defendant's speech and "a strong distinct smell of an intoxicating beverage."

Apparently for the defendant's safety due to the snow-covered road, the officer did not conduct the usual field sobriety tests but, rather, asked the defendant to come back to the patrol car to conduct a horizontal gaze nystagmus ("HGN") test. Apparently, the officer assisted the defendant to the patrol car because of his condition and the weather conditions. The officer then found that the defendant scored a six out of the six possible points on the HGN test, the maximum score that would indicate intoxication. The defendant explained that his vomiting was due to stomach cancer for which he was now receiving treatments.

The defendant was subsequently charged with driving under the influence to which he entered a plea of not guilty. The case then came to be heard upon defendant's motion to suppress evidence and his assertion that the arresting officer lacked probable cause to arrest. After hearing the expert testimony of Dr. Arol Augsburger and the testimony of the arresting officer as foundation for the admission of evidence regarding the HGN test, the trial court excluded evidence of defendant's HGN test and then concluded that there had been insufficient probable cause for defendant's arrest.

The state now appeals from this judgment posing the following two assignments of error:

*Assignment of Error No. 1*

"The trial court's exclusion of evidence is reversible under the present case law and was unreasonable and arbitrary."

*Assignment of Error No. 2*

"The trial court erred in granting the defendant's motion for suppression of evidence since there was sufficient evidence of intoxication to support probable cause for the arrest."

In the first assignment we are asked to review the propriety of the trial court's decision to suppress the defendant's HGN test on the ground that the same is generally unreliable. The state has conceded that its case in support of probable cause to arrest the defendant rests on the admission of the defendant's HGN test results.

It is well settled that a trial court has broad discretion in admitting evidence based on scientific processes and that its ruling on admission or exclusion of such evidence will not be overturned absent a showing of abuse of discretion. See *State v. Bresson* (1990), 51 Ohio St.3d 123, 554 N.E.2d 1330. The term "abuse of discretion" connotes more than error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Id.*

Relying solely on the Ohio Supreme Court's holding in *State v. Bresson, supra,* the state argues that the trial court abused its discretion in excluding evidence of the defendant's HGN test. We agree.

The *Bresson* syllabus reads as follows:

"A properly qualified officer may testify at trial regarding a driver's performance on the horizontal gaze nystagmus test as it pertains to the issues of probable cause to arrest and whether the driver was operating a vehicle while under the influence of alcohol. * * * "

In addition, the *Bresson* court went on to state:

" * * * We hold that *the HGN test has been shown to be a reliable test,* especially when used in conjunction with other field sobriety tests and an officer's observations of a driver's physical characteristics, in determining whether a person is under the influence of alcohol. * * * Thus *the only requirement prior to admission is the officer's knowledge of the test, his training, and his ability to interpret his observations.* The admission of the results of the HGN test is no different from any other field sobriety test, such as finger-to-nose, walk-and-turn, or one-leg stand." (Emphasis added.) *Id.* at 129, 554 N.E.2d 1330.

A trial court is afforded broad discretion as to the admissibility of scientific tests.[1] However, based on the foregoing authority, we find that the trial court abused its discretion in this case by excluding the defendant's HGN test on the ground that the test in general is unreliable, as this finding is directly contrary to the Supreme Court's holding in *Bresson*.

In *Bresson*, the Supreme Court stated, "results of [the HGN] test are admissible so long as the proper foundation has been shown both as to the officer's training and ability to administer the test and as to the actual technique used by the officer in administering the test." *Id.* at 128, 554 N.E.2d 1330. The only conclusion that can properly be drawn from this finding is that, so long as the proper foundation is presented, the test's weaknesses are to go to the weight accorded the results, not to the admissibility of the test in general.

In finding the HGN test unreliable, the trial court refers to the scoring reference point as unscientific and arbitrary and to the results as irrefutable or irrebuttable. We see no need to go into the scientific intricacies behind the HGN test as this has been done many times over. Suffice it to say that the test undoubtedly has shortcomings.[2] However, it is these same weaknesses that specifically provide the defendant with the necessary empirical evidence to refute or rebut the results of his HGN test.

Attempting to distinguish *Bresson*, the defendant argues that the Supreme Court found the HGN test to be reliable by relying on literature written by Dr. Augsburger, who testified in the instant matter. Thus, the decisions are different because one court relied upon literature and the other on the person who wrote the literature. We find that, if anything, this is a more compelling reason to apply *Bresson* to the instant case.

Therefore, as we find that the trial court abused its discretion by ruling that the HGN test is inadmissible because it is unreliable, the state's first assignment of error is sustained.

Regarding the state's second assignment of error, it is clear from reading the trial court's remarks that it based its finding that there was not sufficient

---

1. We note that the *Bresson* court did not directly rule upon the question of whether the HGN test is to be considered as a "scientific" test, although the court's holding implies that it is not.

2. See, generally, 9 American Jurisprudence Proof of Facts 3d (1990), Proof and Disproof of Alcohol–Induced Driving Impairment Through Evidence of Observable Intoxication and Coordination Testing, at 459; and 4 American Jurisprudence Proof of Facts 3d (1989), Unreliability of the Horizontal Gaze Nystagmus Test, at 439.

evidence of intoxication to support probable cause for the arrest primarily on the fact that the defendant's HGN test results had been suppressed.

Thus, this assignment of error is sustained to the extent that the matter be remanded to the trial court, in light of our earlier holding, for reconsideration as to the issue of whether sufficient probable cause existed to arrest the defendant.

Therefore, having found that the state's assignments of error are well taken, this case is reversed and remanded to the Bellefontaine Municipal Court for further proceedings in accordance with this opinion.

*Judgment reversed*
*and cause remanded.*

SHAW and THOMAS F. BRYANT, JJ., concur.