ACCELERATED
 OPINION
Appellant, Barbara S. Lawless, appeals the March 30, 1998 judgment entry of the Portage County Municipal Court, Ravenna Division, finding appellant guilty of driving under the influence, in violation of R.C. 4511.19(A)(1).
The background to this case began on November 7, 1997, at a few minutes past 2:00 a.m., when Trooper Gliozzi ("Gliozzi"), a twenty-four year employee of the Ohio State Highway Patrol at the time, while traveling northbound, noticed appellant's vehicle traveling south on State Route 43 in the area of South Boulevard, located in Twin Lakes, Franklin Township, Portage County, Ohio. At the place of Gliozzi's encounter with appellant, State Route 43 consisted of one northbound and one southbound lane with a three foot paved berm on the right side of each lane. Also, the two lanes were separated by a double yellow line, which precluded any passing. Finally, the area where appellant was sighted was marked by a posted sign which indicated that the speed limit was 35 m.p.h.
The record reveals that Gliozzi noticed appellant's vehicle because it appeared to be traveling in excess of the posted speed limit and "was left of center." Gliozzi then activated his radar and clocked appellant traveling at 48 m.p.h. in a 35 m.p.h. zone. Upon those observations, Gliozzi turned his patrol car around and attempted to catch up to appellant's vehicle, during which time, Gliozzi observed appellant's automobile weaving continually within her lane. Once he caught up to appellant, Gliozzi turned on his overhead lights and spotlight and stopped appellant's vehicle.
While standing outside appellant's vehicle, Gliozzi observed a strong odor of an alcoholic beverage and saw that appellant's eyes were glassy. While receiving appellant's proof of insurance and driver's license, Gliozzi requested that appellant step out of her car and perform some field sobriety tests. Gliozzi first asked her to perform the walk-and-turn test, but before having her do the test, Gliozzi provided her with instructions. Gliozzi determined that appellant had failed the test because she started before the instructions were completed, stopped twice during the first nine steps to steady herself, did not touch heel to toe, landed every step around four inches apart on the first nine steps and approximately one foot apart on the last nine steps, stepped off the line several times, and lost her balance on the pivot turn.
After conducting the walk-and-turn test, Gliozzi performed the horizontal gaze nystagmus ("HGN") test. On the HGN test, Gliozzi observed that appellant's eyes tracked his pin light in an unsmooth manner, and that such tracking was unsmooth before reaching the requisite forty-five degree angle. Thus, appellant also failed the HGN test.
At the conclusion of the two tests, Gliozzi placed appellant under arrest for driving under the influence and advised her of her Miranda rights. Appellant, subsequently, was transported to the State Highway Patrol station where she was read the implied consent form and asked if she had any questions. Appellant then signed the form. After reading the implied consent form and B.M.V. form 2287, which advised appellant of her option to get additional testing, Gliozzi requested her to perform a breathalyzer test, which she refused. The time of the refusal was 2:53 a.m. on November 7, 1997.
The record reveals that on November 10, 1997, a traffic ticket was filed in the Portage County Municipal Court, citing appellant with driving under the influence, in violation of R.C.4511.19(A)(1). Appellant entered a plea of not guilty at her initial appearance. On November 19, 1997, appellant filed a "Motion for Probable Cause," a separate motion for discovery, and a "Motion to Suppress and/or Dismiss" on the ground that any further prosecution after the issuance of a license suspension would constitute Double Jeopardy. A hearing on appellant's motions was set for December 23, 1997; however, appellant and her defense counsel failed to appear at the hearing, so no hearing was conducted on the motions. Finally, a bench trial was conducted in this matter on March 30, 1998.
After the trial, the court filed a judgment entry, on March 30, 1998, finding appellant guilty of driving under the influence, in violation of R.C. 4511.19(A)(1). In that judgment entry, appellant was sentenced to serve ten days in the county jail, fined $450, and ordered to pay court costs. The trial court suspended the sentence imposing ten days of incarceration and a $250 fine, providing that appellant complete a D.U.I. school and pay for such schooling with the portion of the suspended fine, pay all court costs and fines within sixty days, and have no similar offense for two years.
On April 29, 1998, appellant timely filed this appeal and now asserts the following assignments of error:
 "[1.] The trial court erred in not sustaining appellants [sic.] motion to dismiss inthat [sic.] articulable and reasonable suspicion did not exist that appellant was engaged in some criminal activity or violation of the law.
 "[2.] The trial court erred in finding probable cause existed for the arrest of the appellant.
 "[3.] The decision of the trial court is manifestly against the weight of the evidence."
At the outset, we note that appellant's motion to dismiss was set for a hearing for which appellant and her attorney failed to appear and neglected to take any corrective action after such non-appearance. However, in the interest of justice, this court will consider the merits of appellant's assignment of error.
In the first assignment of error, appellant contends that Gliozzi did not have a reasonable and articulable suspicion that she was engaged in a criminal activity because Gliozzi's testimony that she crossed the center line was refuted by her testimony that she did not cross the line, and even if she did, a de minimis line crossing does not justify the stop of a motor vehicle. Furthermore, appellant claims that appellee failed to adequately prove that Gliozzi stopped her for speeding because appellee failed to properly introduce the radar evidence at trial. Appellant argues that Gliozzi should not have been permitted to testify concerning the actual speed of appellant's automobile, as determined by the radar he utilized, since the radar unit was never identified as one accepted by the trial court and no evidence was submitted that the radar was in good working condition. Thus, appellant claims that the stop of her motor vehicle was unconstitutional, and therefore, all subsequent evidence obtained as a result of the stop must be suppressed.
Ohio courts have consistently held that when a police officer actually witnesses a motor vehicle cross a set of double yellow lines, such officer can perform an investigative stop because the crossing of double yellow lines constitutes a violation of R.C.4511.33. See State v. Parkison (Apr. 11, 1997), Lake App. Nos. 96-L-101 and 96-L-120, unreported, at 6; State v. Stamper (Apr. 7, 1995), Ashtabula App. Nos. 94-A-0013 and 94-A-0044, unreported, at 10-11. Furthermore, "when a police officer witnesses a motorist in transit commit a traffic violation, the officer has probable cause to stop the vehicle for the purpose of issuing a citation."State v. Carleton (Dec. 18, 1998), Geauga App. No. 97-G-2112, unreported, at 8. Finally, Ohio courts have held that a police officer's visual perception that a motor vehicle was speeding, coupled with years of experience, constitutes specific and articulable facts which provide the police officer with reasonable grounds to make an investigatory stop, and also is sufficient to support a conviction for speeding. State v. Wilson
(1995), 102 Ohio App.3d 1, 4; Kirtland Hills v. Logan (1984),21 Ohio App.3d 67, 69.
The facts in the instant matter show that Gliozzi had probable cause, under Parkison and Carleton, to conduct a traffic stop of appellant's vehicle since he witnessed the vehicle traveling left of center, which constitutes a traffic violation. Additionally, Gliozzi was justified in stopping appellant's vehicle based upon his observation that it was traveling in excess of the posted speed limit. Accordingly, the trial court did not err in determining that Gliozzi's traffic stop comported with all constitutional requirements. Therefore, appellant's first assignment of error is overruled.
In the second assignment of error, appellant contends that the trial court erred in finding that Gliozzi acquired probable cause to arrest appellant for driving under the influence. In support of this contention, appellant first claims that Gliozzi only conducted the heal-to-toe and HGN field sobriety tests. Additionally, appellant argues that the heal-to-toe test is not a permitted test in Ohio. In the second claim, appellant argues that Gliozzi's testimony concerning the HGN the trial court improperly admitted test because a proper foundation was not established for his testimony. Finally, appellant claims that other tests should have been performed in light of the fact that appellant had knee surgery and was on 800 milligrams of Motrin for her knee and 600 milligrams for her elbow.
Once a motor vehicle has been lawfully stopped, probable cause for a criminal arrest exists when "the facts and circumstances within their [the police] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." Beck v. Ohio (1964), 379 U.S. 89, 91.
Ohio court's have determined that a trial court must view the "totality of the circumstances" in determining whether the probable cause analysis articulated in Beck was satisfied. Statev. Brandenburg (1987), 41 Ohio App.3d 109, 111; State v. Finch
(1985), 24 Ohio App.3d 38, 40. Furthermore, Ohio courts have consistently held that probable cause existed for the arrest of an individual for driving under the influence when evidence was presented that the arresting police officer noticed an odor of alcohol about the defendant's person and the arrestee had failed two field sobriety tests. State v. Wargo (Oct. 31, 1997), Trumbull App. No. 96-T-5528, unreported, at 6-7, 11; State v.Derrick (Mar. 29, 1991), Lake App. No. 90-L-14-028, unreported, at 5-6; State v. Dye (Jan. 13, 1989), Portage App. No. 1959, unreported, at 5.
In the case sub judice, Gliozzi testified that he encountered a "strong odor of an alcoholic beverage," noticed that appellant's eyes appeared glassy, and testified that appellant failed the walk-and-turn and HGN field sobriety tests before placing her under arrest for driving under the influence. Based on the totality of these circumstances, the trial court did not commit error in concluding that probable cause existed for appellant's arrest.
Next, we must consider appellant's three separate claims in her second assignment of error, by which she contends that the trial court erred in determining that probable cause existed.
First, contrary to appellant's contentions, the record reveals that Gliozzi conducted the walk-and-turn and HGN field sobriety tests. Consequently, appellant's first claim is meritless.
Regarding appellant's second claim, the transcript of reveals that appellant neglected to object to Gliozzi's testimony concerning the HGN test on the basis that it was improperly admitted. The Supreme Court of Ohio "has consistently held that an appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court."State v. Williams (1977), 51 Ohio St.2d 112, 117. Thus, appellant's failure to make this objection before the trial court constitutes a waiver of that issue on appeal.
However, we will address the merits of appellant's second claim due to the continual misunderstanding, by a portion of the legal community, of the elements necessary to lay a proper foundation for police testimony concerning HGN test results.
The Supreme Court of Ohio has articulated an unambiguous standard:
 "The trial court has broad discretion in admitting evidence based on scientific processes. * * * Its ruling on admission or exclusion of evidence will not be overturned absent a showing of an abuse of discretion. * * * [T]he only requirement prior to admission [of the HGN test] is the officer's knowledge of the test, his training, and his ability to interpret his observations." State v. Bresson (1990), 51 Ohio St.3d 123, 129.
In Bresson, the appellant was arrested for driving under the influence, in violation of R.C. 4511.19(A)(1) and4511.19(A)(3). At trial, the arresting police officer testified that the appellant had failed the HGN test. The Supreme Court determined that a proper foundation for the HGN test results was established by the fact that the police officer provided testimony concerning how the HGN test was administered and what training he had received in administering the test. Id. at 124, 129.
In our case, the transcript evidences that Gliozzi testified about how he administered the HGN test and also that he had been trained in administering the HGN test during a week long course at the Ohio State Highway Patrol Academy. In addition, Gliozzi stated that he had been administering the HGN test for sixteen to seventeen years. Therefore, appellant's second claim is patently meritless.
In regard to appellant's third claim, the record fails to disclose that appellant did, in fact, consume 800 milligrams of Motrin for her knee or 600 milligrams for her elbow. Furthermore, there is no evidence that the trial court refused to consider this information or that consuming Motrin would adversely affect the field sobriety test results. Therefore, appellant's third claim is not well-taken. Thus, appellant's second assignment of error is meritless.
In the third assignment of error, appellant avers that the decision of the trial court was against the manifest weight of the evidence because appellee failed to demonstrate that Gliozzi had a reasonable and articulable suspicion to legally stop appellant's automobile, since the state failed to lay a proper foundation for the introduction of the radar evidence, and Gliozzi performed the head-to-toe field sobriety test, which is not permitted in Ohio.
In State v. Schlee (Dec. 23, 1994), Lake App. No. 93-L-082, unreported, at 11, this court defined a manifest weight inquiry by an appellate court as follows:
 "`In determining whether the verdict was against the manifest weight of the evidence," (* * *) (t)he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the * * * [trier of fact] lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *) "'* * *" (Citations omitted and Emphasis sic.)
Furthermore, in State v. Davis (1991), 62 Ohio St.3d 326,345, the supreme court stated, "[t]his court held in State v. DeHass (1967), 10 Ohio St.2d 230 * * *, at paragraph one of the syllabus, that `the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts.'"
As discussed in the previous two assignments of error, Gliozzi acquired probable cause to stop appellant's automobile on the basis that he had observed it travel left of center. In addition, Gliozzi was permitted to stop appellant because in his estimation, tempered with years of experience, her vehicle appeared to be traveling in excess of the speed limit. Therefore, even assuming that the traffic stop could not be premised on any radar evidence, Gliozzi still executed a legal stop.
Finally, pursuant to the cases of Davis and DeHass, an appellate court must defer to the trial court's judgment concerning determinations of witness credibility and the weight of the evidence, absent an abuse of discretion. In this matter, there is no indication that the trial court lost its way in weighing the evidence or committed any abuse of discretion. Accordingly, appellant's third assignment of error is without merit.
For the foregoing reasons, appellant's assignments of error are not well-taken and the judgment of the Portage County Municipal Court is affirmed.
_______________________________________
PRESIDING JUDGE DONALD R. FORD
O'NEILL, J., CACIOPPO, J., Ret., Ninth Appellate District, sitting by assignment, concur.