OPINION
Lynn Harville was charged with DUI, in violation of R.C.4511.19(A)(1), reckless operation, in violation of R.C. 4511.20, and failure to wear a seatbelt, in violation of R.C. 4513.263. Harville filed a motion to suppress, alleging the police lacked a reasonable articulable suspicion to stop him and that they also lacked probable cause to arrest him for DUI. He sought suppression of the officers' observations, presumably after the stop, and "any" unMirandized statements. (Harville apparently refused a breath test). After a hearing, the trial court overruled the motion to suppress. (The issue of unMirandized statements was not pursued at the suppression hearing and has not been pursued in this court). The case was tried to the bench, and Harville was found guilty of DUI, not guilty of reckless operation, and guilty of the seatbelt violation, after which the court imposed appropriate penalties. On appeal, Harville advances two assignments of error:
 1) THE TRIAL COURT ERRED WHEN IT FAILED TO SUSTAIN THE SUPPRESSION MOTION, BECAUSE THE OFFICER LACKED REASONABLE SUSPICION TO MAKE THE TRAFFIC STOP.
 2) THE TRIAL COURT ERRED WHEN IT REFUSED TO SUPPRESS THE EVIDENCE, BECAUSE THE STATE FAILED TO MEET ITS BURDEN OF PROVING THAT THE OFFICER HAD PROBABLE CAUSE TO BELIEVE THAT APPELLANT WAS INTOXICATED.
The trial court's opinion overruling the motion to suppress, the facts of which are supported by the hearing testimony, was as follows:
 This matter came before the Court upon the Motion to Suppress filed by Defendant. At the inception of the hearing it was agreed between the parties that the issues to be determined are whether or not there were specific and articulable facts upon which to stop this Defendant and probable cause to arrest this Defendant.
 Terry Garrison testified that he is a Patrolman with the Miami Township Police Department and on November 16, 1998 at 12:27 a.m. he was in uniform in a marked cruiser provided by Miami Township. On that date and at that time he was sitting at a red light eastbound on State Route 725. The light turned green and Officer Garrison observed a vehicle driven by the Defendant and the car beside the Defendant accelerate very quickly with the Defendant's vehicle squealing his tires. Officer Garrison pursued the Defendant's vehicle and reached a speed of 55 miles per hour in a 45 mile per hour zone. The Defendant pulled into the Michael's store lot and exited the vehicle as the Officer exited his cruiser. Officer Garrison observed that the Defendant had to hold onto the truck to stand up and as he approached the Defendant he noticed a strong odor of alcohol emanating from his person.
 Officer Garrison testified that the Defendant was originally stopped for reckless operation but after the observations as to the Defendant's balance and the odor of alcohol emanating from this Defendant, the Defendant was also cited for operating a motor vehicle under the influence of alcohol. Finally, in addition to those two tickets, the Defendant was given a seat belt violation.
 Officer Ron Terry of the Miamisburg Police Department testified that on the date and time in question he was in uniform and marked cruiser provided by the City of Miamisburg. He observed a vehicle operated by this Defendant southbound on State Route 741. The vehicle accelerated quickly causing the tires to lose traction and spin. He observed Officer Garrison stop the vehicle at the Michael's store and pulled in behind Officer Garrison.
 It is Officer Terry's opinion that the Defendant was traveling 55 to 65 miles an hour during the driving pattern.
 Officer Terry further testified that he observed the Defendant and noticed a strong odor of alcohol emanating from the Defendant's person; the Defendant support himself with the truck to maintain his balance; the Defendant's balance was poor; the Defendant's eyes were bloodshot and glassy; and the Defendant's speech was slurred.
 Manifestations of insobriety, personally observed by the Officer, are always relevant where, as here, Defendant's physical condition is in issue. State v. Bresson (1990), 51 O.S.3d, 123.
 The Officer's observation of a traffic violation provided an independently adequate basis to stop the car. State v. Erickson (1996), 75 O.S.3d, 3. The fact that the Defendant's legal position deteriorated from the point of the stop is unfortunate for this Defendant but is not a basis upon which to suppress.
 The Court finds there were specific and articulable facts upon which to stop this Defendant and probable cause to arrest this Defendant.
In addition to the facts set out by the trial court, Officer Garrison testified that Harville travelled at "a high rate of speed . . . (m)aybe a quarter of a mile . . ." and that after he exited his vehicle, he was "having trouble walking." On redirect and recross examination, he explained why he stopped Harville for reckless operation:
BY STATE PROSECUTOR:
 Q. Why did you feel that the driving of the Defendant was reckless at the time?
 A. Well, its just, the amount of traffic, you know its moderate traffic, not heavy traffic, but you know, you pull away at a high, you know, starting at a high rate of speed. You are squealing your tires. Not obviously in control.
STATE PROSECUTOR: Nothing further, Your Honor.
RECROSS EXAMINATION
BY DEFENSE ATTORNEY
Q. I want to go over that. Why are you not in control?
 A. Well, if you (sic) tires are spinning, I don't see how you can be in control of your car, it can do just about anything once that happens.
 Q. Well, then what you are saying is that anytime somebody squeals their tires, whether its due to starting fast or even due to rain, thats (sic) reckless operation?
A. Even in the rain?
Q. Even in the rain?
 A. Its (sic) could be considered that yes, in my opinion.
 Q. So what you are saying, is anytime somebody peels their tires or even the tires squeal for whatever reason that is reckless operation in your book?
A. It could be considered that, yes I feel.
Q. What was the pavement like at that intersection?
A. It was dry.
 Q. Do you remember looking to see if there was any gravel?
A. No.
Q. What was the temperature?
 A. I would have to look at my report to see what the weather conditions were, I'm not sure what the temperature was that night.
Officer Terry testified that Harville's speech was at times incoherent.
The question posed by the first assignment is whether, prior to stopping his vehicle, the police possessed a reasonable articulable suspicion that Harville had been committing the offense of reckless operation. There are three statutory formulations of reckless operation: R.C. 4511.20, 4511.201, and4511.202. R.C. 4511.20 defines the reckless operation offense as follows:
 No person shall operate a vehicle, trackless trolley, or streetcar on any street or highway in willful or wanton disregard of the safety of persons or property.
R.C. 4511.202 defines the reckless operation offense as follows:
 No person shall operate a motor vehicle, trackless trolley, or streetcar on any street, highway, or property open to the public for vehicular traffic without being in reasonable control of the vehicle, trolley, or streetcar.
R.C. 4511.201 has no application to the facts of this case.
Reasonable articulable suspicion is a lesser degree of certainty than probable cause, just as probable cause is a lesser degree of certainty than proof beyond a reasonable doubt. The fact that Harville was found not guilty of reckless operation, therefore, does not necessarily resolve in Harville's favor the question of whether the police had a reasonable articulable suspicion of reckless operation. It does appear that the facts are more compatible with R.C. 4511.202 than with R.C. 4511.20, pursuant to which Harville was charged. However, we are satisfied that Harville's driving, involving as it did squealing tires and excessive speed, was not so innocuous as to preclude a lawful investigative stop for reckless operation.
The first assignment will be overruled.
Harville contends in his second assignment that absent evidence about his performance on field sobriety tests, the State's proof did not rise to the level of probable cause. We disagree. Although we are at a loss to understand why the State did not present evidence of field sobriety tests at the suppression hearing — such evidence was presented at trial — we conclude that the police officers' observations of Harville after the stop were indicative of Harville's actual alcohol impairment rather than that Harville had merely consumed alcohol. As such, the trial court properly concluded that the police had probable cause to arrest Harville for DUI.
The second assignment is overruled.
The judgment will be affirmed.
BROGAN, J. and FAIN, J., concur.
Copies mailed to:
Patrick Carney
Jon Paul Rion
Hon. Robert E. Messham, Jr.