OPINION
This case is before us on the appeal of Justin Marshall from his conviction and sentence for driving under the influence of alcohol (DUI). After a motion to suppress evidence was overruled, Marshall pled no contest to the charge and was found guilty. He was then sentenced to a fine of $250, 15 days in jail, with the sentence suspended upon attendance at WIP, and a drivers's license suspension of one year. Execution of sentence was stayed pending appeal.
In support of his appeal, Marshall asserts the following assignments of error:
 I. The court erred in finding a reasonable articulable suspicion to detain the Appellant for the purpose of conducting field sobriety tests.
 II. The trial court erred in finding that probable cause existed to justify Appellant's arrest.
 I
As with many DUI cases, whether the conviction can be upheld depends on the validity of the original detention and the subsequent arrest. Under well-settled law, the propriety of an investigative stop "must be viewed in light of the totality of the surrounding circumstances." State v. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus. A police officer must point to "specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant" an intrusion. Id. at 178-79.
Furthermore, in reviewing suppression decisions, we do not evaluate credibility. Instead, we decide if the trial court properly applied the law. State v. Woods (1996), 113 Ohio App.3d 240, 244.
In the present case, Ohio State Highway Trooper, Douglas Bitler, was the only witness to testify. Bitler gave the following account of the events leading to Marshall's arrest. On the evening in question, Bitler worked the 11:00 p.m. to 7 a.m. shift. Bitler was southbound on St. Route 72 in Springfield, Ohio, when he saw a 2001 Pontiac traveling northbound on the same road. Bitler's attention was attracted by the car's speed, which was well over the speed limit. The time was about 2:26 a.m.
The speed limit in the area was 35 miles per hour, and Bitler obtained a reading of 48 miles per hour on radar for the Pontiac's speed. As a result, Bitler made a U-turn for purposes of stopping the car. He did not notice any signs of erratic driving. Bitler stopped the car just after it turned right onto a side street.
Two persons were in the car: a driver and a passenger. When Bitler approached the car, he noticed a strong odor of alcohol. He also saw that the driver's eyes were red. The driver (Marshall) was able to produce a license without any apparent problem. Marshall's speech was also clear. Based on the smell of alcohol and the red eyes, Bitler asked Marshall to step outside. Bitler then took Marshall to the cruiser. Marshall did not appear to have any problems walking.
Once they were inside the cruiser, Bitler asked Marshall if he had anything to drink. In reply, Marshall said he had two beers. Bitler then administered the horizontal nystagmus gaze (HGN) test. Marshall scored a six, meaning that he had distinct nystagmus. Although Bitler was convinced at that point that Marshall's blood alcohol level was over the legal concentration, he also administered the walk-and-turn test and the one-leg stand test. Marshall performed well on both these tests.
When the tests were finished, Bitler told Marshall that he thought he was impaired. He then arrested Marshall for DUI.
In the first assignment of error, Marshall contends that the trial court erred in finding that Bitler had reasonable suspicion to detain Marshall for the purpose of conducting field sobriety tests. In particular, Marshall relies on two factually similar cases from our district, where the circumstances did not justify the administration of field sobriety tests. See State v. Dixon (Dec. 1, 2000), Greene App. No. 2000-CA-30, unreported, 2000 WL 1760664, and State v. Spillers (Mar. 24, 2000), Darke App. No. 1504, unreported, 2000 WL 299550.
Dixon and Spillers were brought to the trial court's attention. However, the court distinguished Dixon because the odor of alcohol in the current case was "strong," rather than "unspecified," as in Dixon. The court did not comment on Spillers. However, the court did find the present case analogous to State v. Downey (1987), 37 Ohio App.3d 45, which involved a strong odor of alcohol and the speed of the defendant's vehicle (66 miles per hour in a 50 mile-per-hour zone). Based on Marshall's speed of 48 miles in a 35 mile — per-hour zone and the strong odor of alcohol, the trial court concluded that an officer could reasonably infer "that the speeding could possibly stem from impairment." (Emphasis in original).
As we have said before, the decisions in these kinds of cases are very fact — intensive. State v. Weierman (Dec. 14, 2001), Montgomery App. No. 18853, unreported, slip. op. at p. 8. And, as the trial court noted, a difference exists between the degree of odor involved in Dixon and the present case, i.e, the officer in Dixon testified that the defendant had "an odor of alcohol" on his person. 2000 WL 1760664, at p. 1. Similarly, the odor in Spillers was described as "slight," not "strong." 2000 WL 299550 at p. 1.
We have previously held that "`a strong odor of alcohol alone'" is enough to provide an officer with "reasonable suspicion" of criminal behavior. State v. Haucke, (Mar. 17, 2000), Clark App. No. 99 CA 77, unreported, 2000 WL 282304, p. 2, quoting from State v. Schott (May 16, 1997), Darke App. No. 1415, unreported, 1997 WL 254141. While these may be fine distinctions, and may even prompt police officers to use certain words during their testimony, trial courts have the ability to tell if a particular account is actually believable.
Due to the presence of a strong odor of alcohol, the officer in this case had reasonable suspicion to administer field sobriety tests. Accordingly, the first assignment of error is overruled.
 II
In the second assignment of error, Marshall contends that the arresting officer lacked probable cause for the arrest. In particular, Marshall focuses on the fact that he passed two of the three sobriety tests.
"Probable cause exists when the arresting officer has sufficient information from a reasonably trustworthy source to warrant a prudent person in believing that the suspect has committed or was committing the offense." State v. Otte (1996), 74 Ohio St.3d 555, 559 (citation omitted). In the present case, Trooper Bitler observed the physical signs of intoxication we have already discussed. He also relied on the fact that Marshall received six points on the HGN test. We have previously said that a score of four or more points on the HGN test indicates a BAC level above .10 percent. State v. Ditty (Mar. 24, 2000), Darke App. No. 1497, unreported, 2000 WL 299484, p. 2, citing State v. Bresson (1990), 51 Ohio St.3d 123.
Admittedly, Marshall passed the remaining sobriety tests. Nonetheless, under the totality of the circumstances, a prudent officer would have been justified in believing that Marshall was operating his car under the influence of alcohol. As a result, the second assignment of error is also without merit and is overruled.
Based on the preceding discussion, both assignments of error are overruled and the judgment of the trial court is affirmed.
GRADY, J., and YOUNG, J., concur.