[Cite as *State v. Banks*, 2014-Ohio-5360.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE   COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 2014-CA-11 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 13-CR-387 |
| v. | : | |
| | : | |
| STEVEN JAMES BANKS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 5th day of December, 2014.

. . . . . . . . . . .

STEPHEN K. HALLER, Atty. Reg. #0009172, by STEPHANIE R. HAYDEN, Atty. Reg. #0082881, Greene County Prosecutor's Office, 61 Greene Street, Xenia, Ohio 45385
     Attorneys for Plaintiff-Appellee

CHRISTOPHER WESNER, Atty. Reg. #0082699, Post Office Box 920, 22 North Market Street, Troy, Ohio 45373
     Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, J.

**{¶ 1}** Defendant-appellant Steven James Banks appeals from his conviction and sentence for Operating a Vehicle Under the Influence of Alcohol or Drugs. He contends that the conviction is against the manifest weight of the evidence. He further claims that the trial court erred by permitting evidence regarding the field sobriety tests.

**{¶ 2}** We conclude that the conviction is not against the weight of the evidence. We also find that the trial court did not err in allowing evidence regarding the administration of a field sobriety test. Accordingly, the judgment of the trial court is Affirmed.

### I. A Visit to a McDonald's Drive-thru Leads to an Arrest for OVI

**{¶ 3}** Jordan Virelli was working the drive-thru at the Sugarcreek McDonald's on June 22, 2013. She saw Banks drive his vehicle past the first window where customers pay for their order. He stopped his vehicle in between the first window and the second, order pick-up, window, where he apparently passed out. When he then failed to pull all the way up to that window, Virelli asked the customer behind him to honk at him. At that point, she saw another McDonald's employee walk outside and knock on Banks's car window. Banks woke up, pulled up to the second window, and was given his food. Virelli then left her window and went to the second window to take his money. According to Virelli, Banks seem "very disoriented," and was "acting strange." Tr. p. 38. He appeared to have vomit on his shirt. Banks left the drive-thru and parked in the restaurant's parking lot. At that point, Virelli called the police.

**{¶ 4}** Sugarcreek Township Police Department Leslie Stayer responded to the scene.

Stayer had taken ADAP [Alcohol Detection and Prosecution] training, and had been trained to apply the Horizontal Gaze Nystagmus test. She explained that with the test, she looks for six indicators which, if observed, demonstrate a high probability that the test subject will have a blood alcohol content over 0.10. Stayer typically performs the test with a shiny pen, because that is easy for test subjects to focus upon. She then instructs the subject to follow the pen with their eyes, without moving their heads. She then checks to see if the subject can track the pen and looks to see if there is any twitching, jerking or bouncing of the eye. She holds the pen "12 to 15 inches away from [the subject's] nose," and moves the pen, having the subject move their eyes as far to the sides as possible. The pen is then held for a few seconds to observe whether the eye is bouncing. Stayer finally moves the pen at a 45-degree angle; again looking for bouncing of the eye. Tr. p. 73. A subject can have a total of six indicators with this test if both eyes test positive on all three phases of the test. Stayer has made "hundreds" of arrests for driving under the influence during her thirteen years as an officer. Tr. p. 105.

{¶ 5} Upon her arrival at the McDonald's, at 2:00 a.m., Stayer parked behind the vehicle identified by Virelli, in order to block it in. She then walked up to the car and made contact with Banks, the driver. Banks was eating in the car. While she spoke to him, Banks looked straight ahead rather than at her. According to Stayer, Banks was "disheveled," had bloodshot eyes, and appeared to have "something slopped down his shirt." Tr. p. 82. Banks told Stayer that he was coming home to West Carrollton from his job at the Cincinnati Zoo, that he got on I-675 and traveled to the Sugarcreek McDonald's. His speech was slurred.

{¶ 6} When Stayer asked Banks for his driver's license, he indicated that he was under suspension and had no license. He then produced an Ohio Identification Card. According to

Stayer, Banks moved very slowly in producing the card. At that point, Stayer had Banks exit his car. She immediately smelled alcohol. She then informed him that she was going to administer the HGN test, and asked him whether he wore contacts or glasses, which he denied wearing. Upon testing, Stayer found that he was positive on all indicators with both eyes. During the testing, Banks was off balance and swaying so much that Stayer thought he would sway into her. Stayer then asked Banks to perform another field sobriety test, known as the walk-and-turn dexterity test. Banks declined to take any further tests.

{¶ 7} Stayer arrested Banks for driving under the influence, and transported him to the police station. Once in the processing room, Stayer asked him to read along with her as she went through the BMV 2255 form regarding taking a chemical test for intoxication and the consequences of refusing the test. Banks put the form down and said that Stayer had taken his glasses. Stayer did not see him wearing any glasses, besides which, Banks had told Stayer that he did not wear glasses.

{¶ 8} Sergeant Mark White arrived on the scene as Stayer was talking to Banks. He testified that Banks' speech was slurred, and Banks appeared "very unsteady, very disoriented." Tr. p. 129. White testified that when Banks exited the vehicle, food he was eating fell to the ground. After Banks was transported to the station, White witnessed Stayer read the BMV 2244 form to Banks. White testified that Banks refused to submit to a blood, breath or urine test, and also refused to sign the form.

{¶ 9} Officer Timothy Pyles, who also arrived on the scene, performed an inventory search of Banks' vehicle after Banks was arrested. Pyles found a twelve-pack box of Budweiser with only two cans remaining, both of which were unopened, and were cool and showing

condensation on the outside. He also found a bottle of Windsor Canadian whiskey in the middle console. The liquid in the bottle was the color of whiskey and smelled like whiskey. Pyles testified that part of training for OVI includes learning the odor of alcohol. The bottle was two-thirds empty.

{¶ 10} Pyles fingerprinted Banks at the police station. According to Pyles, Banks had difficulty following instructions, lost focus, and actually walked away from Pyles several times. Pyles testified that Banks had "red, glassy eyes," and smelled of alcohol. Tr. p. 159. Pyles also testified that when he informed Banks that he would have the opportunity to retrieve his alcohol, Banks made the statement that the "heads" did not want the bottle because they did not "want to drink after a commoner like me." Tr. p. 161.

{¶ 11} The parties stipulated that Banks had three prior convictions for Driving Under the Influence of Alcohol, all of which had occurred within the six years prior to this trial.

## II. The Course of Proceedings

{¶ 12} Banks was indicted on one count of Operating a Motor Vehicle While Under the Influence of Alcohol or Drugs in violation of R.C. 4511.19(A)(1)(a), and one count of Operating a Motor Vehicle While Under the Influence of Alcohol or Drugs in violation of R.C. 4511.19(A)(2)(a)(b).

{¶ 13} Following a jury trial, Banks was convicted as charged. His convictions were merged as allied offenses, and he was sentenced accordingly. A motion for a judgment of acquittal and a motion for a new trial were overruled. Banks appeals from his conviction and sentence.

### III. Banks's OVI Conviction Is Not Against the Manifest Weight of the Evidence

{¶ 14}   Banks's First Assignment of Error states:

MR. BANKS' CONVICTION FOR THE OFFENSE OF OVI WAS

AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 15}   Banks contends that the State failed to prove a violation of R.C. 4511.19(A)(1)(a) because there was no evidence that he "consumed alcohol to the point of appreciable impairment."   In support, he argues that the beer cans in his car were unopened, and there was no evidence that the bottle found in his car contained alcohol.   He also questions the accuracy of Officer Stayer's HGN test.

{¶ 16}   In addressing a manifest weight assignment, an appellate court reviews the whole record and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence the trier of fact clearly lost its way and created a manifest miscarriage of justice requiring reversal of the conviction and remand for a new trial.   *State v. McKnight*, 107 Ohio St.3d 101, 112, 2005-Ohio-6046, 837 N.E.2d 315.   The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.   *Id.*

{¶ 17}   The credibility of the witnesses and the weight to be given to their testimony are primarily matters for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N .E.2d 212 (1967). "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is

against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).

{¶ 18} Banks was convicted of Operating a Vehicle Under the Influence of Alcohol, in violation of R.C. 4511.19(A)(1)(a), which provides:

(A)(1) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply:

(a) The person is under the influence of alcohol, a drug of abuse, or a combination of them.

{¶ 19} "[B]eing 'under the influence' of alcohol or intoxicating liquor means that the accused must have consumed some intoxicating beverage, whether mild or potent, and in such a quantity, whether small or great, that the effect thereof on him was to adversely affect his actions, reactions, conduct, movements or mental processes, or to impair his reactions, under the circumstances then existing so as to deprive him of that clearness of the intellect and control of himself which he would otherwise possess." *State v. Zimmerman*, 2d Dist. Montgomery No. 19528, 2003-Ohio-1551, ¶ 24, quoting *State v. Steele*, 95 Ohio App. 107, 111, 117 N.E.2d 617 (3rd Dist. 1952).

{¶ 20} Despite his claim that there is no evidence of intoxication, the circumstantial evidence in this case is strong. While waiting in the drive-thru line at McDonald's, Banks fell asleep and had to be awakened. An employee testified that he appeared disheveled and had

vomit on his shirt. The police officers all testified that Banks had bloodshot eyes, smelled of alcohol, and exhibited slurred speech. There was evidence that he was unsteady on his feet during the field sobriety test, and that he failed the HGN test. A twelve-pack carton of beer, with only two remaining beer cans, which were cool to the touch, was found in his car. Additionally, a bottle with a liquid described as having the color and smell of whiskey was recovered from the car. That bottle was more than half empty.

{¶ 21} We conclude that there is substantial probative and reliable evidence in this record that Banks was under the influence of alcohol when he arrived, and parked, at the McDonald's. This is not the exceptional case where a jury has lost its way. Accordingly, the First Assignment of Error is overruled

### IV. The Trial Court Did Not Err in Admitting Testimony Concerning the Horizontal Gaze Nystagmus Field Sobriety Test

{¶ 22} Banks's Second Assignment of Error is as follows:

THE TRIAL COURT ERRED TO MR. BANKS' PREJUDICE WHEN IT ALLOWED THE STATE TO ADMIT EVIDENCE REGARDING THE HORIZONTAL GAZE NYSTAGMUS TEST ("HGN") WITHOUT REQUIRING EXPERT TESTIMONY TO ESTABLISH THE VALIDITY OF THE HGN TEST AND THE SCIENTIFIC PRINCIPLES UNDERLYING THE TEST.

{¶ 23} Banks contends that the trial court erred by permitting evidence regarding the HGN test without expert testimony. He also contends that the trial court should not have permitted Stayer to testify that finding positive results on the HGN test indicates a high

probability that the subject will test over 0.1 percent.

{¶ 24} The Supreme Court of Ohio has stated that "HGN test results are admissible in Ohio without expert testimony so long as the proper foundation has been shown both as to the administering officer's training and ability to administer the test and as to the actual technique used by the officer in administering the test." *State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155, ¶ 28. In this case, there is evidence that Stayer went through appropriate training with regard to the administration of field sobriety tests, including the HGN test, and that she has extensive experience with such testing. Furthermore, she testified regarding the administration of the test to Banks, as well as the results thereof. We conclude that the trial court did not abuse its discretion by admitting this testimony.

{¶ 25} Next Banks contends that error occurred when Stayer testified that based upon her training, observing just four positive indicators results indicates "that there's a very high probability that [the subject is] going to test over .10." Tr. p. 74. He cites *State v. Bresson*, 51 Ohio St.3d 123, 554 N.E.2d 1330 (1990), for the proposition that an officer's testimony regarding the results of an HGN test may not be admitted to show the exact alcohol concentration level of the defendant. *Id.*, syllabus.

{¶ 26} Stayer did not testify as to Banks's exact alcohol concentration level. She merely testified that having four of the indicators on the HGN test is a good indicator that a person is at or over 0.10 percent. This is in accord with the test manual devised by the United States Department of Transportation. *Bresson*, at 126.

{¶ 27} We find no abuse of discretion with regard to Stayer's testimony. Accordingly, the Second Assignment of Error is overruled.

## V.   Conclusion

**{¶ 28}**   Both of Banks's Assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

HALL, J., concurs.

FROELICH, P.J., concurring:

**{¶ 29}**   I am troubled by the officer's statement that there is a high probability that the driver is going to test over .10.   With a charge of operating a vehicle "under the influence," the BAC level is, absent expert testimony, irrelevant.   However, there is nothing in this record demonstrating that the jury was aware of the statutorily prohibited levels, or how, if at all, a test of "over .10" relates to being "under the influence of alcohol" as that term is defined. *Zimmerman, supra*.   I therefore concur.

. . . . . . . . . .

Copies mailed to:

Stephen K. Haller
Stephanie R. Hayden
Christopher Wesner
Hon. Stephen Wolaver