DECISION AND JOURNAL ENTRY
Defendant Pedro Rodriguez has appealed a judgment from the Lorain County Common Pleas Court that convicted him of complicity to murder with a firearm specification. This Court affirms.
 I.
On November 1, 1997, Stanford Clark died as a result of a gunshot wound to his head. After it was determined that his death was a homicide, Defendant, Salvador Rivera, Gabriel Burgos, and Omar Figueroa were indicted by the Lorain County Grand Jury. Specifically, Defendant was charged with the following: complicity to murder, a violation of R.C. 2923.03(A)(2) and R.C.2903.02; aggravated burglary, a violation of R.C.2911.01(A)(1)and(2); aggravated robbery, a violation of R.C.2911.11(A)(1); and a three-year firearm specification for each offense. Rivera was indicted as the principal in the count alleging the murder of Mr. Clark, while Burgos and Figueroa were charged with the same counts as Defendant.
Defendant, as well as Figueroa and Rivera, entered a plea of not guilty. The State offered Burgos a plea agreement that consisted of him agreeing to testify on behalf of the State, in exchange for a reduction of his murder charge to involuntary manslaughter. Burgos accepted the State's bargain and pled guilty to involuntary manslaughter, aggravated burglary, aggravated robbery with a one-year firearm specification, for which he received a six year term in prison. On August 7, 1998, a joint motion for consolidation for trial was made on behalf of Defendant, Figueroa, and Rivera. The trial court consolidated Defendant and Figueroa's trial, but denied the request to join Rivera.
At the start of his trial, Defendant renewed his motion to consolidate Rivera's case; however, the trial court refused to grant his request. A competency hearing was held for the State's witness, Bernie Feliciano, because he was nine years old at the time of the trial. The trial court questioned the child and determined that he was competent to testify. No objection to the trial court's ruling appears in the record.
Next, the State called Burgos to testify. When cross-examining Burgos, Defendant's counsel questioned him about his plea bargain. The trial court restricted the impeachment of Burgos by not allowing Defendant to question Burgos concerning any potential punishment for the offenses for which he was indicted. The trial court also restricted any questions concerning Burgos' Computer Voice Stress Analysis (CVSA) test. At the close of the State's case, Defendant moved the trial court for an acquittal. The trial court granted an acquittal for the aggravated robbery and aggravated burglary, along with both firearm specifications, but denied his request for the complicity to murder and its firearm specification.
In Defendant's case-in-chief, he subpoenaed Rivera to testify. Rivera asserted his right under the Fifth Amendment against self-incrimination. At the conclusion of all the evidence, Defendant renewed his motion for acquittal. The trial court denied his motion. Defendant also asked the trial court to instruct the jury as to accident. The trial court refused this request as well.
The jury found Defendant guilty of complicity to murder with the firearm specification. The trial court sentenced him to a term of fifteen years to life imprisonment and to an additional three years for the firearm specification, to be served consecutively. Defendant has timely appealed his conviction, asserting seven assignments of error.
 II.
A. Assignment of Error Number One
 The trial court erred when it refused to join the trial of Defendant Rivera with the trial of [Defendant] and Defendant Figueroa thereby denying [Defendant] his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States and Article 1, Section 10 of the Ohio Constitution.
 In his first assignment of error, Defendant has claimed that he is entitled to a new trial because his constitutional rights were violated. Specifically, Defendant has asserted that his constitutional rights were violated when the trial court denied his motion to consolidate Rivera's case. This Court disagrees.
Crim.R. 8(B) permits the State to join multiple defendants in a single indictment if they have participated in the same act or transaction, or in the same course of criminal conduct. Crim.R. 13 allows the trial court to consolidate the trial of defendants who have been or could have been joined in a single indictment. Crim.R. 14 provides, in pertinent part, that:
 If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires.
 Although joinder of defendants is favored because it is efficient, joinder is not permissible if it will cause substantial prejudice to the right of a defendant's fair trial. Bruton v. United States (1968), 391 U.S. 123, 131-132, 20 L.Ed.2d 476, 482-483. The Supreme Court stated in Bruton that:
 A defendant may be prejudiced by the admission of evidence against a co-defendant of a statement or confession made by that co-defendant. This prejudice cannot be dispelled by cross-examination if the co-defendant does not take the stand.
Id. at 132, 20 L.Ed.2d at 483.
Defendant has asserted that if Rivera's case was consolidated with his trial, Rivera's testimony would have exculpated him. Throughout the trial, Defendant and his co-defendant Figueroa presented incriminating evidence that Rivera was responsible for the murder. Rivera was subpoenaed and refused to testify at Defendant's trial. Because the severance of Rivera's case was proper to protect his constitutional right against self-incrimination, Defendant's first assignment of error is overruled.
B. Assignment of Error Number Two
 The trial court erred in restricting the impeachment of a State's witness, thereby violating [Defendant's] rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 10 of the Ohio Constitution.
 In his second assignment of error, Defendant has argued that his constitutional rights were violated when the trial court limited the scope of his cross-examination of Burgos. Specifically, Defendant has challenged the fact that he could not mention Burgos' CVSA test or the substantial reduction in Burgos' sentence because of his plea bargain. This Court disagrees.
"The scope of cross-examination and the admissibility of evidence during cross-examination are matters which rest in the sound discretion of the trial judge." O'Brien v. Angley (1980),63 Ohio St.2d 159, 163. In reviewing a decision of the trial court that excluded certain evidence from trial, this Court shall not overturn a decision absent a showing of an abuse of discretion. State v. Bresson (1990), 51 Ohio St.3d 123, 129. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Id.
R.C. 2945.11 requires a trial court to instruct the jury that it must not consider punishment when determining whether a defendant is guilty. A sidebar discussion at the bench revealed that the trial court was concerned that it would be unfair for the jury to know the possible penalty for Burgos' original charges because they were identical to Defendant's charges. Based on the foregoing, the trial court was correct in concluding that the jury could have speculated or drawn a comparison from the possible penalty. See, e.g., State v. Shearer (Dec. 19, 1997), Wood App. No. WD-97-017, 1997 Ohio App. LEXIS 5648, unreported, at *5. Therefore, Defendant's argument concerning the plea bargain is not well taken.
Defendant has also argued that his attempt to introduce the use of the CVSA test was a trial tactic to impeach Burgos. In his brief, Defendant has asserted that the test provided the necessary evidence to prove that the State threatened Burgos into changing his statements. This Court notes that Defendant, as well as the State, conceded that evidence of polygraph tests is not generally admissible because such results are unreliable. See State v. Rowe
(1990), 68 Ohio App.3d 595, 609. Defendant's argument is not well taken and his assignment of error is overruled.
C. Assignment of Error Number Three
 The trial court erred when it refused to charge the jury as to accident.
 In his third assignment of error, Defendant has asserted that there was enough evidence at trial to warrant an instruction to the jury on accident. Specifically, Defendant has challenged the decision of the trial court because witnesses testified that they saw a struggle. This Court disagrees.
The trial court has the duty of limiting the scope of jury instructions to only the facts in issue that the evidence tends to establish or disprove. Murphy v. Carrollton Mfg. Co. (1991),61 Ohio St.3d 585, 591. A determination by the trial court to exclude a jury instruction shall not be overturned absent an abuse of discretion. State v. Wolons (1989), 44 Ohio St.3d 64, 68. An accident is an event that occurs unintentionally and without any design or purpose to bring it about. State v. Fears (1999),86 Ohio St.3d 329, 340. "[F]or an accident to occur, [there] must have been a physical event which would not be reasonably anticipated as a result of an unlawful act." State v. Denton
(Sept. 30, 1993), Franklin App. No. 93AP-603, 1993 Ohio App. LEXIS 4709, unreported, at *3. Although Defendant has asserted that the trial court should have instructed the jury on accident, no privilege of any kind can attach to an intentional discharge of a weapon. Id. It is undisputed that at some point Rivera pointed the gun at the victim. Because the pointing and discharging of a gun in the general direction of the victim is an unlawful act, Defendant is not eligible for an instruction on accident. See id.
at *3-*4. This Court concludes that the trial court did not abuse its discretion when it excluded a jury instruction on accident. Accordingly, Defendant's third assignment of error is overruled.
D. Assignment of Error Number Four
 The trial court abused its discretion when it found that a nine year old [sic] witness was competent to testify and refused to permit counsel for [Defendant] to make inquiry of the witness prior to ruling that the witness was competent to testify.
 In his fourth assignment of error, Defendant has challenged the way the trial court conducted the competency hearing of Bernie Feliciano. Essentially, Defendant has argued that the trial court erred when it did not engage in a thorough inquiry and prevented counsel from presenting evidence. This Court disagrees.
In reviewing the transcript of Defendant's trial, it appears that Defendant failed to object to the competency determination of the trial court. Because the issue of competency is not preserved for appeal, this Court must determine whether the trial court committed plan error in finding Bernie Feliciano competent to testify at trial. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v.Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. This Court will only apply Crim.R. 52(B) if it is clear that, but for the alleged error, the outcome of the trial would have been different. State v. Keen (Mar. 24, 1999), Lorain App. No. 97CA006900, unreported, at 4.
Evid.R. 601(A) presumes that children under the age of ten are incompetent to testify. State v. Clark (1994), 71 Ohio St.3d 466,469. The burden is on the party seeking to introduce the child's testimony to overcome the presumption. Id. The Ohio Supreme Court has established five factors that a trial court must consider when determining whether a child is competent to testify:
 (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful.
State v. Frazier (1991), 61 Ohio St.3d 247, syllabus, certiorari denied (1992), 503 U.S. 941, 117 L.Ed.2d 629.
During the competency hearing, Bernie knew his name, age, birth date, that he was in second grade, the name of his school, and where his grandparents lived. His answers to other questions demonstrated his capacity to distinguish between truth and falsity. Specifically, Bernie stated that if he said he was in the fifth grade that would be a lie and he would get in trouble. The trial court was correct in determining that Bernie was competent to testify; therefore, Defendant's fourth assignment of error is overruled.
E. Assignment of Error Number Five
 [Defendant] was denied the effective assistance of counsel.
 In his fifth assignment of error, Defendant has argued that his Sixth Amendment rights were violated. Specifically, Defendant has asserted that his trial counsel was ineffective because counsel failed to request an instruction on the lesser included offense of voluntary manslaughter, failed to obtain a firearm and forensic science expert, and did not effectively cross-examine the State's witnesses. This Court disagrees.
A properly licensed attorney in Ohio is presumed competent.State v. Smith (1985), 17 Ohio St.3d 98, 100. The burden of proving counsel's ineffectiveness, therefore, is on the defendant.Id. A defendant is denied effective assistance of counsel when his attorney's performance falls below an objective standard of reasonable representation and the defendant is prejudiced as a result. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. Because a strong presumption exists that counsel's conduct falls within the wide range of reasonable professional assistance, to show prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id. at paragraph three of the syllabus.
In the case at bar, trial counsel's decisions not to obtain a firearm or forensic science expert and not to cross-examine the State's witnesses on specific issues were tactical decisions, made by counsel at the time of trial and, this Court is not in a position to second guess trial counsel's decisions. Such debatable trial tactics do not constitute a denial of effective assistance of counsel. State v. Mitchell (Sept. 3, 1997), Summit App. No. 18369, unreported, at 3. In addition, the decision not to request an instruction on a lesser included offense is a matter of trial strategy and does not establish ineffective assistance of counsel. See State v. Griffie (1996), 74 Ohio St.3d 332, 333. Because trial counsel's performance did not fall below an objective standard of reasonableness, Defendant was not denied effective assistance of counsel at trial. Therefore, Defendant's fifth assignment of error is overruled.
F. Assignment of Error Number Six
 The evidence presented at trial was insufficient to support a finding of guilt.
 Assignment of Error Number Seven
 The verdict was against the manifest weight of the evidence.
 For ease of discussion, this Court will address Defendant's sixth and seventh assignment of errors together because his arguments are interrelated. Defendant has asserted that his conviction was not supported by the evidence presented at trial and that the verdict was against the manifest weight of the evidence. Specifically, Defendant has argued that the State failed to prove that the victim was murdered and that Defendant purposely aided or abetted Rivera in the murder. This Court disagrees.
As an initial matter, evaluations of the sufficiency of the evidence put forth by the state and the weight of the evidence adduced at trial are separate and legally distinct determinations.State v. Gully (Mar. 15, 2000), Summit App. No. 19600, unreported, at 3. To determine whether the evidence before a trial court was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the prosecution:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus; see, also, State v. Thompkins (1997), 78 Ohio St.3d 380,386 ("`[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law").
While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion. Id. at 390 (Cook, J. concurring). In determining whether the state has met its burden of persuasion, a reviewing court does not view the evidence in the light most favorable to the state. Gully, supra, at 3. Instead, a reviewing court must:
 review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. A new trial is warranted only in the exceptional case where the evidence weighs heavily in favor of the defendant. Id. "Becausesufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." (Emphasis sic.) State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462, unreported at 4.
Pursuant to R.C. 2923.03(A)(2), an individual may be an accomplice if he aids and abets another in committing the offense while acting with the kind of culpability required for commission of the offense. The culpability required in this case for murder is specific intent. Defendant, Figueroa, and Burgos all admitted at trial that they had smoked marijuana and drank alcohol with Rivera the day that the victim died. They also admitted to handling Rivera's gun at the house on Elyria Avenue. At trial, Defendant, Figueroa, and Burgos testified that they had left the house on Elyria Avenue together with Rivera and that Rivera drove to his girlfriend's house. It is at this point that the testimony of Defendant and Figueroa differs from Burgos, the State's witness.
Burgos testified that Rivera came out of his girlfriend's house angry because some property was stolen. He went on to say that he heard Rivera say that he was going over "there to cap them" and drove off in a hurry. Rivera handed Figueroa some bullets and Figueroa loaded the gun. While Rivera was driving to the victim's house, Figueroa gave the gun to Defendant, who then gave the gun to Rivera. They parked across the street from the victim's house. Burgos admitted that they had visited the victim's house earlier in the day and Rivera had exchanged words with a woman who was later identified as Elizabeth Feliciano. As they walked to the victim's house, Rivera placed the gun in the back of his pants. Burgos stood next to Rivera and knocked on the front door, while Defendant and Figueroa stood behind them. Rivera banged on the door screaming, until the victim opened it. Rivera and the victim began yelling at each other. At some point, Rivera pulled out his gun and pointed it at the victim's head. Burgos saw the victim try to push the gun away and saw a flame. Burgos immediately ran away.
Defendant, on the other hand, testified that Figueroa told him that they were going to the victim's house to get some property that belonged to Rivera. He saw Rivera with a gun earlier in the day, but he didn't know Rivera had the gun when they went to the victim's house. He denied the fact that they had visited the victim's house earlier that day and did not know who loaded the gun.
Defendant has argued that Burgos' testimony is unreliable because gun-shot residue was found not only on Rivera's hands, but on one of Burgos' hands and one of the victim's hands. Both Defendant and Figueroa testified that the death was caused by a short struggle between Rivera and the victim. Both testified that Rivera and the victim were pushing and yelling at each other before the gun was discharged. Defendant and Figueroa suggested that Burgos could have been involved in the struggle because he had gun powder on one of his hands; however, neither is certain how the gun was fired.
The State's witnesses, Elizabeth and Bernie Feliciano, testified that they saw Defendant, Rivera, Figueroa, and Burgos at their front door, where the victim was shot. Elizabeth and Bernie heard Rivera and the victim shouting. Both saw Rivera point a gun at the victim. They watched as the victim attempted to push the gun away. Next, they heard a loud boom and saw a flash. Both saw Burgos, Rivera and Figueroa run from the scene while Defendant kicked the victim several times in the head before fleeing. Bernie further described Defendant's act as if he intended to "squash [the victim] like a bug."
Defendant called Ms. Oyola, a neighbor of the victim, as his only other witness.[1] Ms. Oyola testified that Defendant came to her house looking for her brother after the incident occurred and was there when the police asked questions. She recalled Defendant appeared drunk, but was still able to walk on his own. She also testified that Defendant left with her brother.
Although there were inconsistencies in the testimony presented at trial, this Court will not overturn a judgment based solely on the fact that the jury preferred one version of the testimony over the other. State v. Gilliam (Aug. 12, 1998), Lorain App. No. 97CA006757, unreported, at 4. Additionally, the evaluation of the weight to be given to the evidence and evaluation of the credibility of the witnesses are functions primarily reserved for the trier of the fact. The jury heard several witnesses testify that Defendant was with Rivera throughout the day. Defendant also admitted to handling Rivera's gun while at a house on Elyria Avenue. Defendant also testified that he was aware that they were going to the victim's house to get some of Rivera's property. Although Defendant has asserted that Burgos was unreliable, he was not the only compelling witness for the State. The State also presented the testimony of Elizabeth and her son, Bernie, who witnessed the incident. Both identified Defendant at the scene. Lastly, Bernie testified that after the victim was shot Defendant "squashed him like a bug."
In light of the foregoing, this Court concludes that this is not an exceptional case in which the weight of the evidence warrants a new trial. Defendant's assertion that the State failed to present sufficient evidence to support his conviction, therefore, is also without merit. Defendant's six and seventh assignments of error are overruled.
 III.
Defendant's assignments of error are overruled. The judgment of the trial court is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ BETH WHITMORE
BATCHELDER, P.J., CARR, J. CONCUR.
[1] This Court notes that his co-defendant, Figueroa, testified but did not call any witnesses.