DECISION AND JUDGMENT ENTRY
This is an appeal from a November 20, 1998 judgment entry of the Erie County Court in which the court: 1) accepted a jury verdict and found appellant guilty of driving under the influence of alcohol in violation of R.C. 4511.19(A)(1); 2) found appellant guilty of failure to control his vehicle, a violation of R.C. 4511.202; 3) sentenced appellant to pay a $20 fine and $25 in court costs for the failure to control conviction; and 4) sentenced appellant to one hundred eighty days in jail, ordered his driver's license suspended for five years, and ordered him to pay $1,500 as a fine and $895 as court costs for his conviction for driving under the influence.
Appellant has presented five assignments of error for consideration that are:
 "I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN ADMITTING TESTIMONY REGARDING THE FIELD SOBRIETY AND HORIZONTAL GAZE NYSTAGMUS TESTS.
 "II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT ALLOWED TESTIMONY AND INSTRUCTED THE JURY, THAT APPELLANT'S REFUSAL TO TAKE A CHEMICAL TEST COULD BE CONSIDERED AS EVIDENCE CONCERNING A FACT IN ISSUE.
 "III. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT ALLOWED HEARSAY TESTIMONY OF THE APPELLANT'S CHARACTER.
 "IV. THE JURY'S VERDICT FINDING THE APPELLANT GUILTY OF DRIVING WHILE UNDER THE INFLUENCE OF ALCOHOL IN VIOLATION OF R.C. 4511.19(A)(1) WAS AGAINST THE MANIFEST RIGHT [SIC] OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.
 "V. APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL:
 A. FAILED TO EFFECTIVELY CROSS-EXAMINE THE ARRESTING OFFICER REGARDING HIS QUALIFICATIONS AND METHODOLOGY USED IN ADMINISTERING THE FIELD SOBRIETY AND HORIZONTAL GAZE NYSTAGMUS TESTS AND FAILED TO OBJECT TO THE TESTIMONY AND JURY INSTRUCTIONS REGARDING APPELLANT'S REFUSAL TO TAKE A CHEMICAL TEST;
 B. FAILED TO OBJECT TO EVIDENCE OF APPELLANT'S CHARACTER WHICH VIOLATED OHIO EVIDENCE RULE 404."
This case began on July 6, 1998 when a citation charging appellant with driving under the influence in violation of R.C. 4511.19(A)(1) and with failure to control a motor vehicle in violation of R.C.4511.202 was filed in the Erie County Court. Appellant entered not guilty pleas to each charge, and the case proceeded to trial. After appellant was found guilty of both charges and was sentenced, he filed a notice of appeal in this court on December 17, 1998.
In support of his first assignment of error, appellant argues that the state trooper who charged him with driving under the influence of alcohol should not have been permitted to testify at trial about the field sobriety tests he had appellant perform or the horizontal gaze nystagmus (HGN) test results. He says that the state trooper was not a qualified expert and that there was no verification of the trooper's training.
Appellant says that the HGN test "is not within the realm of lay knowledge and testimony." He argues that pursuant to Evid.R. 702 and case law from the United States Supreme Court and the Supreme Court of Ohio, a trial court must make certain that evidence that relates to technical, specialized or scientific information is not only relevant, but is also reliable. For instance, in 1990, the Supreme Court of Ohio ruled that:
 "A properly qualified officer may testify at trial regarding a driver's performance on the horizontal gaze nystagmus test as it pertains to the issues of probable cause to arrest and whether the driver was operating a vehicle while under the influence of alcohol. See R.C. 4511.19(A)(1). However, such testimony may not be admitted to show what the exact alcohol concentration level of the driver was for purposes of demonstrating a violation of R.C. 4511.19(A)(2), (3), or (4)." State v. Bresson (1990), 51 Ohio St.3d 123, syllabus.
Appellant says this holding shows that a trooper must have special training before the trooper administers a HGN test. Appellant also says that pursuant to Evid.R. 702, and decisions from the United States Supreme Court in Daubert v. Merill DowPharmaceutical, Inc. (1993), 509 U.S. 579 and in Kumho Tire Co.Ltd. v. Carmichel (1999), 526 U.S. 137, and a decision of the Supreme Court of Ohio in Miller v. Bike Athletic Co. (1998),80 Ohio St.3d 607, a trial court has an obligation to ensure that the expert testimony given by the trooper is reliable and relevant before the testimony is admitted. He also contends that pursuant to Evid.R. 702 the trial court must be satisfied that the methods used by the trooper were correct.
Turning first to the issue of the trooper's qualifications, appellant argues the testimony in this case was not sufficient for the trial court to conclude that the trooper was competent to testify as an expert regarding the HGN and other field sobriety tests. He says that the trooper only testified that he received training at the Highway Patrol Academy ten years before appellant's trial, that he attended a refresher course the year of the trial, and that he was certified following his attendance at the refresher course. Appellant says: "There was almost no testimony regarding the substance of his training or who issued the certification."
Our review of the record shows that the trooper did testify that he received his initial training in administering field sobriety tests, as initiated by the National Highway Safety Council at the Highway Patrol Academy probably ten years before appellant's trial. He also testified that he attended a refresher course at the academy in May 1998, prior to the date of appellant's arrest.
He then testified that he had appellant do a walk and turn test, a one-legged stand test and the HGN test for field sobriety tests. He began testifying about how he administered the walk and turn test in this case, including that there was no white line for appellant to follow. He said there were eight clues to watch for on the walk and turn test, and that if a person failed two of the clues, there is a sixty-eight percent chance that the person's ability to drive or to function is impaired. At that point, appellant's trial counsel objected, saying that the trooper had never been qualified as an expert.
The trial court overruled the objection telling appellant's trial counsel: "You can cross-examine him on it."
The trooper was then asked more questions regarding his training. He testified that he was certified following his training. He said that instructors at the academy had actual participants who were drinking at known levels of alcohol concentrations and that he tested those participants using the field sobriety tests. His results were compared with the known information regarding whether the participants were actually under the influence. The trooper then testified to the way he conducted the field tests on appellant and the results he recorded without any further objection from appellant's trial counsel. Appellant's trial counsel did not later move to strike the trooper's testimony and did not further cross-examine the trooper regarding his training and expertise for administering field sobriety tests.
Our research shows that Ohio courts are in agreement that while the preferred procedure is for a trial court to permit a party challenging an expert witness's qualifications to conduct a voir dire solely on that witness's training and experience, the failure to permit a voir dire is harmless error where three factors are shown. The three factors are: 1) the party objecting to the expert witness has the opportunity to cross-examine the witness on the witness's training and experience; 2) the party objecting to the expert witness on the grounds of qualifications did not make any motion to strike the expert witness's testimony; and 3) the record shows that the witness did have sufficient training and experience to qualify as an expert. See, e.g., Metropolitan Life Ins. Co. v. Tomchik (Sept. 20, 1999), Columbiana App. No. 98-CO-22, unreported; Umari v.Richardson (Oct. 22, 1991), Franklin App. No. 91AP-534, unreported; and Hirschfeld v. Spring Creek Gravel Co. (Mar. 5, 1984), Auglaize App. No. 2-82-17, unreported. All three factors exist in this case. The trial court told appellant's counsel he could cross-examine the trooper on the trooper's training and qualifications. Appellant's counsel did not move to strike the testimony given by the trooper. And finally, the trooper's testimony about his training and certification through the State Police Academy was sufficient to support the implied ruling of the trial court that the trooper was qualified to testify as an expert.
We next consider appellant's argument that the trooper's testimony showed that the results of his field sobriety walk-and-turn test on appellant are not admissible pursuant to Evid.R. 702, because the methods he used to give the test was not reliable. Appellant points first to the testimony of the trooper that he did not use a white line on the ground for appellant to follow when he administered the test to appellant. Appellant then quotes from the "DWI DETECTION AND STANDARDIZED FIELD SOBRIETY TESTING" manual published by the U.S. Department of Transportation and the National Highway Traffic Safety Administration the following provisions:
 "IF ANY ONE OF THE STANDARDIZED FIELD SOBRIETY TEST ELEMENTS IS CHANGED, THE VALIDITY IS COMPROMISED.
"* * *
 "Walk-and-Turn test requires a designated straight line, and should be conducted on a dry, hard, level, nonslippery surface, under relatively safe conditions. There should be sufficient room for suspects to complete nine heel-to-toe steps. If these conditions do not exist, suspects should be asked to perform this test elsewhere or only HGN should be used. SUSPECT'S AND OFFICER'S SAFETY SHOULD BE CONSIDERED AT ALL TIMES."
Appellant urges us to follow the same reasoning we used in State v.Homan (May 14, 1999), Erie App. No. E-97-100, unreported, when we excluded the results of a HGN and of a walk-and-turn test because the officer who administered them admitted that he did not follow all of the procedures listed in the manuals explaining the standards for the tests. Id. In State v. Homan we said:
 "We agree that the results of the HGN and walk-and-turn test should not have been relied on as a basis to arrest appellant because they were not performed in accordance with standardized methods and procedures. According to the manual, if any one of the standardized test elements is changed, then the validity of the test is compromised. [The officer] admitted that he did not perform the tests in the standardized method set forth in the manual. [The officer] attempted to justify the alterations he made to the tests by stating that he always did them in such a manner and that he was orally instructed to perform them in that manner. We, however, find that, based on the manual itself, these tests must be done in the standardized manner prescribed, otherwise the results are invalid. By allowing the tests to be performed in various manners would create inconsistency across the state and would strip the tests of their reliability." Id.
We ruled that even without those test results there was sufficient other evidence in that case to give the officer probable cause to arrest the suspect for driving under the influence. Id. However, when the driver challenged her DUI conviction on the basis that it was against the manifest weight of the evidence, we ruled that her case was prejudiced by the improper admission of the results of the HGN and the walk-and-turn tests, and that the jury lost its way and created a manifest miscarriage of justice. We therefore reversed the conviction and remanded the case for a new trial without the unreliable evidence. Id.
Appellee urges us to adopt a standard of substantial compliance for field tests. Appellee says: "If only substantial compliance with the Ohio Adm. Code is required as to the admissibility of chemical test readings for a strict liability statute, it is not logical that strict compliance should be the standard for HGN and walk-and-turn tests."
This court declines appellee's invitation to abandon the reasoning we followed in State v. Homan, id. Therefore, we conclude that appellant is correct when he argues that the trooper should not have been permitted to testify about the results of the improperly administered walk-and-turn test.
Finally, appellant argues that the results of the field sobriety tests were not relevant because of the chronology of events in this case, and that even if they were relevant, they were more prejudicial than probative. Appellant points to the following facts.
The Ohio State Highway Patrol first received a call reporting a truck in the ditch on State Route 13 at 3:27 a.m. When the state troopers responding to the call first saw appellant's pickup truck at 3:53 a.m., it was stationary. The back portion of the truck was stuck in a ditch, and the front portion of the truck was on State Route 13. The truck doors were locked and its hazard lights were flashing. No one was inside the truck, and appellant was not at the scene. The state trooper who eventually cited appellant for driving under the influence and for failure to control a vehicle did not see appellant until 5:00 a.m. when he talked with appellant at appellant's father's home.
Appellant says that even if he was somewhat impaired by alcohol at that time, it does not show that he was impaired when he was driving because he testified that he drank two glasses of wine after the accident but before he spoke with the state trooper. He says the state trooper "could not establish the chronological nexus between the time of driving and the accident." He therefore concludes: "The evidence that Appellant, in the opinion of the officer, failed the Field Sobriety Tests unknown hours after the event, after consuming additional alcohol is prejudicial and irrelevant as to Appellant's condition at the time of driving."
Appellee responds that appellant established the chronology of events when he took the stand in this case. He testified that he picked his girlfriend up sometime between 3:00 and 3:15 a.m. He did not dispute that his truck was already stuck in the ditch by 3:27 a.m. when the state police received the report about the truck. He also did not dispute that he spoke with the trooper at 5:00 a.m. and that he took field sobriety tests shortly thereafter. Appellee says appellant's arguments that the field sobriety test results are not relevant are without merit.
We agree with appellee. The chronology of events was sufficiently established by appellant's own testimony to show the chronology of events in this case, and to show that the field sobriety tests were conducted within two hours from the time appellant drove his truck and it got stuck in the ditch. Accordingly, we reject appellant's argument that the results of the field sobriety tests were not relevant. We find appellant's first assignment of error well-taken as to the argument that the walk-and-turn test results should have been excluded from evidence, but not well-taken as to the results of the remaining field sobriety tests.
In support of his second assignment of error, appellant argues that plain error occurred in this case when the trial court gave the following jury instruction:
 "Evidence has been introduced indicating the Defendant was asked but refused to submit to a chemical test of his breath to determine the amount of alcohol in his system for the purpose of suggesting that the Defendant believed he was under the influence. If you find that the Defendant refused to submit to said test you may, but are not required, to consider this evidence along with all other facts and circumstances in evidence in deciding whether the Defendant was under the influence of alcohol."
He says that his case was prejudiced by this instruction because "it placed too much weight on the testimony of Defendant's refusal, causing the jury to lose its way." He argues that he had no legal obligation to take a breathalyser test because he was not under arrest and he had not been read the warnings on BMV Form 2255 before the trooper asked him to go to the Huron police station and take a breath test. He again argues that because the chronology of events was not established in this case, it is not clear that the test would have been taken within two hours from the time his truck got stuck in the ditch and the test results would not have shown that he was under the influence of alcohol at the time he was driving.
Appellee responds that the question of whether a suspect was already under arrest and was read the warnings found in BMV Form 2255 is only relevant in cases where a driver's license is automatically suspended for refusing to take a breath test. Appellee says appellant's driver's license was not administratively suspended so he did not need to be under arrest or read the warnings on the BMV form before he was asked to take the breath test.
Appellee also says that even if appellant had taken the breath test two and a half hours after he got his truck stuck in the ditch, appellee could have called an expert to testify about the breath test's findings. Therefore, appellee says, if appellant had agreed to take the breath test the results would have been admissible.
Finally, appellee says that appellant waived any error associated with the jury instruction when he did not object to it at trial and that any error associated with the instruction is harmless because the remaining evidence clearly shows that appellant was driving under the influence of alcohol.
Any right to challenge a jury instruction on appeal is generally waived if a party does not object to the instruction at trial. Statev. Adams (1980), 62 Ohio St.2d 151, 153. A jury instruction can be challenged for the first time on appeal only when the instruction rises to the level of plain error. Plain error exists when "substantial rights of the accused are so adversely affected as to undermine the `fairness of the guilt determining process.'" State v.Swanson (1984), 16 Ohio App.3d 375, 377 (quoting State v. Gideons
(1977), 52 Ohio App.2d 70, 77-78). Under the facts in this case, we cannot find that the instruction rose to the level of plain error.
The trooper testified that he did ask appellant if appellant was willing to go to the police station in Huron, Ohio to take a breath test, and that appellant said no. In contrast, appellant testified that he asked to take a breath test and that the trooper said no because it was not necessary. If the jury found appellant credible, it could have decided not to consider any alleged refusal to take a breath test.
In addition, even assuming arguendo that the instruction should not have been given, we find the error harmless because the other evidence relating to whether or not appellant was driving under the influence was sufficient to prove beyond a reasonable doubt that appellant was guilty of driving under the influence. The other evidence included the testimony from the trooper that when he opened the truck door after appellant's father gave him the keys to the truck he noticed a strong odor of alcohol in the truck. In addition, he testified that he concluded after administering the HGN test and the one-legged stand test on appellant that appellant was under the influence of alcohol. This information, standing alone, was enough for the jury to conclude beyond a reasonable doubt that appellant was guilty of driving under the influence of alcohol. See State v.Williams (1983), 6 Ohio St.3d 281, paragraph six of the syllabus. Appellant's second assignment of error is not well-taken.
In support of his third assignment of error, appellant argues that the trial court committed prejudicial error when it permitted hearsay testimony regarding appellant's character. He points to testimony given by the trooper relating to information appellant's father told him indicating why appellant's father first told the trooper that he had been driving the truck when it got stuck in the ditch. The trooper testified that he first arrived at the scene at 3:53 a.m. After he observed the truck he called a tow truck to remove the stuck vehicle because it created a traffic hazard. He said:
 "P W towed the truck out of the ditch and as he was doing his final hooking up so he could tow it, hooking his safety chains and that, a car came down the roadway traveling southbound on 13 and he stopped at the scene and a gentleman asked what was going on. And I said somebody put the truck in the ditch here and we are getting it towed out. He thought I was trying to stop him, that's what I thought at first. I was trying to protect the wrecker from traffic because the wrecker was somewhat left of center trying to tow him out.
 "The guy drove away. Approximately two minutes later he came back to the scene. He walked up to me and he said that's my truck."
The trooper learned who the man was, and learned also that he was the father of appellant. He testified:
 "When I talked to him he stated that he was driving the truck, he attempted to do a Y-turn and he drove off the roadway into the ditch. I asked him for the keys to the vehicle and he produced them. I had him have a seat in my patrol car. I went up to check the interior of the vehicle, and when I opened the truck up there was a very, very strong odor of alcoholic beverage that emitted as soon as I opened the door."
The trooper said he looked for something spilled in the truck or for empty containers of alcoholic beverages, but he did not find anything. He said:
 "* * * So I walked back to the Defendant [sic] and said who was driving, and he said he was driving and I said, no, the person who was driving was intoxicated because I can smell the odor of alcohol in the vehicle. I told him I was going to be impounding the vehicle as evidence until I could find out who the driver was because it was an unreported crash. At which time he said that his son, Lon Hall, had been driving."
The trooper was then asked about the explanation appellant's father gave for first saying he was the driver of the truck, not appellant. Appellant's trial counsel objected and a bench conference was held. At the bench conference the prosecutor told the court the trooper had been instructed "not to mention that." The prosecutor said the trooper's answer would be: "That he was covering up for his son and didn't want him to get into any more trouble." The court then overruled the objection.
The trooper continued his testimony and explained:
 "Just that he had problems and he didn't want to have any contact with the police at this time. One thing he indicated he thought there was an outstanding warrant, which there was not for anything."
Appellant says the above statement should have been barred pursuant to Evid.R. 404(B) which reads:
"(B) Other crimes, wrongs or acts
 Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."
Appellee responds that the disputed testimony does not fit under Evid.R. 404(B) because the trooper never identified any other crimes, wrongs or acts committed by appellant. To the contrary, the trooper testified that there were no outstanding warrants for appellant. Appellee also argues that even if the trial court erred when it permitted the testimony, the error was harmless because appellant's case was not prejudiced since the trooper testified that the suggestion that appellant may have had outstanding warrants was false.
We agree with appellee that even if we assume arguendo that the jury should not have been told that appellant's father believed appellant may have had outstanding warrants and therefore tried to say that he was the driver of the truck, the error was harmless in this case. As appellee points out, the trooper clearly said that there were no outstanding warrants against appellant for anything, so there was no implication left regarding any specific prior crime, wrong or act committed by appellant. Appellant's third assignment of error is not well-taken.
In support of his fourth assignment of error, appellant argues that his conviction for driving under the influence is not supported by the sufficiency of the evidence as a matter of law and that it is against the manifest weight of the evidence. He says that the evidence simply does not show all of the required elements of R.C.4511.19(A)(1), that he was operating his truck while under the influence of alcohol.
The Supreme Court of Ohio has explained the standards for sufficiency of the evidence and for manifest weight of the evidence as follows:
 "With respect to sufficiency of the evidence, `sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486, 55 Ohio Op. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
"Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. Robinson, supra, 162 Ohio St. at 487, 55 Ohio Op. at 388-389, 124 N.E.2d at 149. Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' (Emphasis added.) Black's supra, at 1594.
"When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.Tibbs, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 Ohio B. Rep. 215, 219, 485 N.E.2d 717, 720-721. (`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.')" State v. Thompkins
(1997), 78 Ohio St.3d 380, 386-387.
Keeping these standards in mind, we now consider the arguments presented relating to this assignment of error.
As to the sufficiency of the evidence, appellant says that the evidence does not show beyond a reasonable doubt that he was under the influence of alcohol at the time he was driving his truck. He again refers to the chronology of events and points out that his truck was stationary when it was found by the trooper, that he was not present at the scene, that the trooper could not establish the time when appellant was driving the truck, and that the field sobriety tests were not given to him until "several hours after the time of operation" of his truck and that he testified that he drank alcohol at his father's home after he got his truck stuck but before he took the field tests.
As to the manifest weight challenge, he argues again that there was no proof of the correlation between the time he was driving and the time of his possible impairment. He also says that he provided testimony showing that he suffered from physical limitations that could affect the outcome of the field sobriety tests, and that the field sobriety tests were therefore flawed and unreliable. He says the trial court permitted testimony showing that appellant refused to take a breath test, leading to an inference that appellant knew he could not risk taking the test because of the amount of alcohol he consumed. He says this inference was prejudicial, since his consumption of alcohol after he finished driving his truck would have skewed the results of any breath test and would have made them inadmissible.
Appellee responds that appellant's conviction is supported by evidence that is legally sufficient. Appellee also argues that appellant's conviction for DUI is not against the manifest weight of the evidence.
We have already recounted much of the evidence that was presented at trial in our discussion of other assignments of error that were presented. For the sake of clarity, we will briefly recap that evidence and then will further recite the additional evidence that was presented at trial that we have not yet discussed.
As we previously noted, the trooper testified that the first report of appellant's stuck truck was received at 3:27 a.m. on July 4, 1998. The trooper arrived at the scene at 3:53 a.m. When he arrived, the engine of the truck was not running, the doors on the truck were locked, and no one was in or around the truck. Even though the doors of the truck were locked, the trooper could smell the odor of alcohol coming from inside the truck.
The back portion of the truck was stuck in a ditch. The front portion of the truck was on one lane of State Route 13. The hazard lights of the truck were flashing, but because of the position of the truck, oncoming traffic could not see the hazard lights. The trooper therefore made arrangements to have the truck towed.
At around 4:15 a.m., just as the tow truck was pulling out, appellant's father arrived at the scene. As we noted previously, he stopped and asked what was happening, learned the truck was being towed, and drove on past the scene. He returned shortly thereafter, and identified himself as the owner of the truck. He gave the trooper the keys to the truck and the trooper opened the truck. Then he told the trooper he had been driving the truck and got it stuck in the ditch while trying to do a Y-turn.
When the trooper opened the truck door, he noticed a very strong odor of alcohol but could not find any spilled alcohol or any empty containers of alcoholic beverages. After the trooper said he did not believe appellant's father was driving, appellant's father admitted he was not and identified appellant as the driver.
The trooper then took a statement from appellant's father in which appellant's father said he had been home sleeping. He told the trooper that appellant woke him up and told him he got the truck stuck in the ditch. Appellant asked his father to take care of the situation for him. At trial, appellant's father and appellant both testified to these same facts. The father told the trooper his son had been drinking.
The trooper then made arrangements to have the truck towed to appellant's father's house. He remained at the site where the truck was found for a while longer so that he could finish his investigation. As part of his investigation, he measured skid marks on the road that were approximately eighty feet long. The trooper then followed the tow truck to appellant's father's house. Appellant's father went inside the house and about five minutes later appellant came outside to talk with the trooper.
The trooper testified that appellant's speech was somewhat slurred, and there was a strong odor of an alcoholic beverage on appellant's breath. The trooper asked appellant what happened and appellant told him he was driving, he tried to do a Y-turn and he got stuck in the ditch. Appellant said he had one beer prior to the time he got the truck stuck in the ditch. He told the trooper he had his girlfriend in the truck with him when it got stuck, but that she was now at her home. When the trooper asked appellant if appellant drank any alcohol after he got the truck stuck, appellant replied that he was declining to answer that question. The trooper then asked appellant to do field sobriety tests.
The trooper recorded that appellant had three of four clues for being under the influence of alcohol when appellant did the one-legged stand test. Appellant was swaying while trying to keep his balance, raised his arms to keep his balance, and was hopping while trying to stay on one foot.
The trooper testified that appellant showed all six clues for being under the influence of alcohol when the trooper administered the HGN test. The trooper testified that he then asked appellant if appellant wanted to voluntarily go to the Huron police station and take a breath test. Appellant said no. Appellant testified that he asked to voluntarily take a breath test, but the trooper said no because it was not necessary.
Appellant's father testified that he was asleep when he son woke him up sometime after 3:00 a.m. on July 4, 1998. His son told him about the truck stuck in the ditch, and asked him to take care of getting it out of the ditch. Appellant's father testified that his son was muddy and sweaty from walking from the truck to his house, and that his son wanted to take a shower and clean up.
On cross-examination, appellant's father testified that appellant was born with misshapen feet, and had to have corrective surgery that left him with flat feet. He said that appellant's feet were bothering him while he walked a mile to a mile and a half from the truck to his father's house, so appellant took off his shoes and his feet got cut and muddy. He also testified that appellant limps badly normally because he suffered back injuries after falling ten feet while working at a friend's house.
Appellant testified that he has lived with his father for two and a half years, since he hurt his spine from a fall. He said that on the evening of July 3, 1998, his met his mother and some siblings and their friends at a restaurant. His girlfriend agreed to meet him there too, but never arrived. He kept trying to call her, but there was no answer at her home. He had two drinks at the bar of the restaurant between six and seven o'clock in the evening while waiting for his girlfriend who never arrived. Eventually, he joined the others for a meal without his girlfriend.
He took his mother home and visited with her for a while. He kept trying to reach his girlfriend by telephone, but remained unsuccessful. He went to his father's house, and paddled a canoe on the river near the house for a short time. At about 11:00 p.m. he had a beer to try to relax so he could go to sleep.
He said he thought his girlfriend must have gone to the bars with her friends, so "after closing time" he went to her apartment to see if he could find her. He said she was not in her apartment. He found her out on a deck with another man. He said she was "pretty well intoxicated."
He said they went for a ride in his truck so they could talk. He said she had an open bottle of a peppermint Schnapps with her in the truck. He said they got into an argument and that she told him she was dating the man he saw her with on the deck at her apartment complex. He said he got angry, locked up his brakes, and tried to do a Y-turn. He said it was quite muddy, and his tires fell off the berm. He could not drive his truck out of the ditch, so he locked it up and turned on the hazard lights. He left his girlfriend in the truck and began to walk for help.
He said he knocked on the door of the house nearest to where the truck got stuck, but no one answered. He said he decided to just walk the mile or mile and a half from the truck to his father's house.
He testified that after he got to his father's house, his father agreed to go take care of the truck. He said he had two glasses of wine after his father left and that it calmed him down a little bit. He said he took a shower because he got all muddy on the walk home, and that he was just getting out of the shower when his father came back and said a trooper was outside waiting to talk with him.
He said he thought he did well on the field sobriety tests and that he passed them all. He said when the trooper told him he was going to be charged with driving under the influence of alcohol, he asked to take a breath test but the trooper said that was not necessary. He said he was not intoxicated when he was driving his truck.
First, we find that the evidence in this case was legally sufficient to support the guilty verdict returned by the jury. Appellant's own testimony established that he was driving the truck. Furthermore, his testimony established a chronology of events that showed he got the truck stuck at 3:27 a.m. took fifteen to twenty minutes to walk to his father's house and spoke with the trooper by 5:00 a.m. He took field sobriety tests shortly after that, and the trooper's testimony showed that the HGN test and the one-legged stand test results indicated that appellant was intoxicated.
Second, we find that appellant's conviction is not against the manifest weight of the evidence in this case. While we recognize that appellant tried to establish that he was not intoxicated when he was driving and that his poor performance on the field sobriety tests could be because he drank wine after driving but before taking the field sobriety tests, we also recognize that the jury clearly did not find his testimony credible. Viewing the evidence in this case as a whole, and sitting as a thirteenth juror, we cannot conclude that the jury lost its way or that the conviction of appellant for DUI was a manifest miscarriage of justice. Appellant's fourth assignment of error is not well-taken.[1]
In support of his fifth assignment of error, appellant argues that he received ineffective assistance of trial counsel. He argues that his trial counsel failed to effectively cross-examine the trooper about the trooper's qualifications to conduct field sobriety tests and about the methods the trooper used to give the field sobriety tests. He also argues that his trial counsel failed to object to inadmissible evidence about appellant's refusal to take a breath test and failed to object when the trooper testified that appellant's father feared there were outstanding warrants for appellant.
The Supreme Court of Ohio has adopted a two-part test for ineffective assistance of trial counsel. State v. Bradley (1989),42 Ohio St.3d 136, 137. The defendant asserting ineffective assistance of trial counsel must show: (1) that the representation given by the complaining defendant's counsel fell below "an objective standard of reasonable representation"; and (2) the substandard representation resulted in prejudice to the complaining defendant.Id. at 137, paragraph two of the syllabus. Furthermore, a strong presumption exists that representation is effective. State v.Jackson (1980), 64 Ohio St.2d 107, 110-111.
Applying these standards to this case, we conclude that appellant has not shown that he received ineffective assistance of counsel. Even if we assumed arguendo that his counsel's representation fell below objective standards of reasonable representation, as we have discussed in the preceding assignments of error, appellant's case was not prejudiced by any of the errors appellant asserts his trial counsel made. Accordingly, appellant's fifth assignment of error is not well-taken.
The judgment of the Erie County Court is affirmed. After reviewing the record and considering the arguments presented, we find that appellant was not prejudiced or prevented from having a fair trial. Appellant is ordered to pay the court costs of this appeal.
Peter M. Handwork, J., Mark L. Pietrykowski, J., CONCUR.
Melvin L. Resnick, J., CONCURS IN JUDGMENT ONLY.
[1] In accordance with our finding in Assignment of Error No. I that the walk-and-turn test results should not have been admitted into evidence at trial, we have not included that test result in our consideration of whether there was sufficient evidence to support appellant's conviction or of whether appellant's conviction was against the manifest weight of the evidence. As our analysis in the fourth assignment of error shows, the remaining evidence was sufficient to support the finding that appellant was guilty of driving under the influence. Accordingly, even though we agreed in Assignment of Error No. I that the trial court erred when it admitted the trooper's testimony about the results of the walk-and-turn test, we find that error was harmless in this case.