DECISION AND JOURNAL ENTRY
Defendant Slavador Rivera has appealed a judgment from the Lorain County Common Pleas Court that convicted him of aggravated murder, murder, aggravated burglary, and aggravated robbery, with firearm specifications. This Court affirms.
 I.
On November 1, 1997, Stanford Clark died as a result of a gunshot wound to his head. After it was determined that his death was a homicide, Defendant, Gabriel Burgos, Pedro Rodriguez, and Omar Figueroa were indicted by the Lorain County Grand Jury. Specifically, Defendant was charged with the following: aggravated murder, a violation of R.C. 2903.01(B); murder, a violation of R.C. 2903.02(A); aggravated burglary, a violation of R.C.2911.11(A)(1) and (2); aggravated robbery, a violation of R.C.2911.01(A)(1); and a three-year firearm specification for each offense. Defendant was indicted as the principal in the count alleging the murder of Mr. Clark, while Burgos, Rodriguez, and Figueroa were charged with complicity to murder.
Defendant, as well as Rodriguez and Figueroa, entered a plea of not guilty. The State offered Burgos a plea agreement that consisted of him agreeing to testify on behalf of the State, in exchange for a reduction of his murder charge to involuntary manslaughter. Burgos accepted the State's bargain and pled guilty to involuntary manslaughter, aggravated burglary, aggravated robbery with one-year firearm specification, for which he received a six-year term in prison. On August 7, 1998, a joint motion for consolidation for trial was made on behalf of Defendant, Rodriguez, and Figueroa. The trial court consolidated Rodriguez and Figueroa's trial, but denied the request to join Defendant.
The case proceeded to a jury trial on October 4, 1999, with twelve witnesses testifying on behalf of the State. Burgos, a co-defendant named in the indictment, was one of the witnesses. During its case-in-chief, the State recalled Detective Albert Rivera to rebut testimony from Patrolman Soto's cross-examination. Defendant's attorney objected. At the close of the State's case, Defendant moved the trial court for an acquittal, which the trial court denied.
Defendant did not present any witnesses or evidence. After deliberating, the jury found Defendant guilty on all charges and the trial court sentenced him accordingly. Defendant has timely appealed, asserting four assignments of error.
 II. A. Assignment of Error Number One
 The [trial court] committed prejudicial error when it allowed the State, over objection, to immediately recall [Detective Rivera][1] in rebuttal, prior to the Defense putting on its case, when the State failed, on the record, to reserve the right to recall him on direct[.] (sic) By this, the court undertook an active, unwarranted, inappropriate role in prosecution of this matter that skewered justice and the rights of Defendant.
In his first assignment of error, Defendant has argued that the trial court erred in allowing the State to recall Albert Rivera to the stand. This Court disagrees.
A trial court has discretion in deciding whether to allow a witness who has already testified to be recalled for further testimony. See State v. Manley (Dec. 22, 1995), Greene App. No. 95-CA-17, unreported, 1995 Ohio App. LEXIS 5820, at *7. Absent an abuse of discretion, this Court will not overturn the trial court's decision. Id. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." (Citations omitted.)State v. Bresson (1990), 51 Ohio St.3d 123, 129.
In the case at bar, the trial court requested that the State call its witnesses out of order due to time constraints. As a result, the State called Detective Rivera before Patrolman Soto. During cross-examination, Soto stated that the parking lot was poorly lit. The State immediately requested permission to recall Rivera to clarify this issue. The trial court acknowledged that the State had reserved the right to recall the witness and granted the request. Detective Rivera was then recalled for this limited purpose. Defendant was permitted to cross-examine Detective Rivera; however, he declined the opportunity.
In reviewing the record, this Court concludes that the trial court did not abuse its discretion. Defendant had a full opportunity to cross-examine the witness upon recall and has not shown that he was prejudiced in any way. Therefore, his first assignment of error is overruled.
 B. Assignment of Error Number Two
 The court improperly overruled Defendant's [Crim.R. 29] motion for acquittal because there was insufficient evidence to prove (sic)charges indicted.
 Assignment of Error Number Three
 The jury verdict of guilty (sic) aggravated murder, murder, aggravated burglary, aggravated robbery was against the manifest weight of the evidence.
For ease of discussion, this Court will address Defendant's second and third assignment of errors together. Defendant has asserted that the evidence presented at trial does not support his conviction and that the verdict was against the manifest weight of the evidence. This Court disagrees.
As an initial matter, evaluations of the sufficiency of the evidence put forth by the State and the weight of the evidence adduced at trial are separate and legally distinct determinations.State v. Gully (Mar. 15, 2000), Summit App. No. 19600, unreported, at 3. To determine whether the evidence before a trial court was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the prosecution:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus; see, also, State v. Thompkins (1997), 78 Ohio St.3d 380,386 ("`[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.")
While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. Id. at 390 (Cook, J. concurring). In determining whether the state has met its burden of persuasion, a reviewing court does not view the evidence in the light most favorable to the State. Gully, supra, at 3. Instead, a reviewing court must:
 review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 State v. Otten (1986), 33 Ohio App.3d 339, 340. A new trial is warranted only in the exceptional case where the evidence weighs heavily in favor of the defendant. Id.
R.C. 2903.01(B) provides, in part, that "[n]o person shall purposely cause the death of another or the unlawful termination of another's pregnancy while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, kidnapping, rape, aggravated arson or arson, aggravated robbery or robbery, aggravated burglary or burglary, or escape."
R.C. 2911.01(A)(1) defines aggravated robbery as "[n]o person, in attempting or committing a theft offense * * * shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"
The requirements for aggravated burglary are set forth in R.C. 2911.11(A), which provides that:
 No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
* * *
 (2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.
 Finally, R.C. 2903.02(A) states that "[n]o person shall purposely cause the death of another or the unlawful termination of another's pregnancy."
The State's witnesses, Laqua Butler and Bernie Feliciano, testified that they saw Defendant, Rodriguez, Figueroa, and Burgos at their front door, where the victim was shot. Prior to the shooting, Laqua and Bernie heard Defendant and the victim shouting. Laqua testified that Defendant was trying to get into the residence. Laqua saw Defendant point a gun at the victim three times. Laqua also watched as the victim attempted to push the gun away each time. Both heard a loud boom and saw a flash. Next, they saw Burgos, Defendant, and Figueroa run from the scene, while Rodriguez kicked the victim several times in the head before fleeing.
Burgos admitted at trial that he had smoked marijuana and drank alcohol with Defendant the day that the victim died. He also admitted to handling Defendant's gun at the house on Elyria Avenue. At trial, Burgos testified that he had left the house on Elyria Avenue together with Defendant, Rodriguez, and Figueroa and that Defendant drove to his girlfriend's house.
Burgos testified that Defendant came out of his girlfriend's house angry because some property was stolen. He went on to say that he heard Defendant say that he was going over "there to cap them" and drove off in a hurry. Burgos observed Defendant hand Figueroa some bullets to load the gun. While Defendant was driving to the victim's house, Figueroa gave the gun to Rodriguez, who then gave the gun to Defendant. They parked across the street from the victim's house. Burgos admitted that they had visited the victim's house earlier in the day and Defendant had exchanged words with a woman who was later identified as Elizabeth Feliciano.
As they walked to the victim's house, Defendant placed the gun in the back of his pants. Burgos stood next to Defendant and knocked on the front door, while Figueroa and Rodriguez stood behind them. Burgos admitted that at first he knocked on the door, but then Defendant banged on the door screaming until the victim opened it. Next, Burgos testified that Defendant and the victim began yelling at each other over the stolen property. Defendant demanded to know the location of his property. At some point, Defendant pulled out his gun and pointed it several times at the victim's head. Burgos saw the victim try to push the gun away for the third time and saw a flame. Burgos immediately fled the scene.
Defendant did not testify at trial or call any witnesses. Although there were inconsistencies in the testimony presented at trial, this Court will not overturn a judgment based solely on the fact that the jury preferred one version of the testimony over the other. State v. Gilliam (Aug. 12, 1998), Lorain App. No. 97CA006757, unreported, at 4. Additionally, the evaluation of the weight to be given to the evidence and evaluation of the credibility of the witnesses are functions primarily reserved for the trier of the fact. The jury heard several witnesses testify that Defendant was with Burgos, Rodriguez, and Figueroa throughout the day. The witnesses also saw Defendant attempt to force his way into the victim's house and point his gun at the victim's head three times. In light of the foregoing, this Court concludes that this is not an exceptional case in which the weight of the evidence warrants a new trial. Moreover, "[b]ecause sufficiency
is required to take a case to the jury, [and] a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency," (Emphasis sic.) see State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462, unreported at 4, Defendant's assertion that the State failed to present sufficient evidence to support his conviction, therefore, is also without merit. Defendant's second and third assignments of error are overruled.
 C. Assignment of Error Number Four
 Defendant's trial counsel ineffective assistance of counsel (sic) because he failed to submit a jury instruction of "intoxication" as the evidence suggests that Defendant was intoxicated and high and to such to a state that precludes the formation of specific intent.
In his fourth assignment of error, Defendant has argued that his Sixth Amendment rights were violated. Specifically, Defendant has asserted that his trial counsel was ineffective because counsel failed to request an instruction on intoxication. This Court disagrees.
A properly licensed attorney in Ohio is presumed competent.State v. Smith (1985), 17 Ohio St.3d 98, 100. The burden of proving counsel's ineffectiveness, therefore, is on the defendant.Id. A defendant is denied effective assistance of counsel when his attorney's performance falls below an objective standard of reasonable representation and the defendant is prejudiced as a result. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. Because a strong presumption exists that counsel's conduct falls within the wide range of reasonable professional assistance, to show prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id. at paragraph three of the syllabus.
The decision not to request an instruction on intoxication is a matter of trial strategy and does not establish ineffective assistance of counsel. See State v. Hill (1995), 73 Ohio St.3d 433,443. Because trial counsel's performance did not fall below an objective standard of reasonableness, Defendant was not denied effective assistance of counsel at trial. Therefore, Defendant's fourth assignment of error is overruled.
 III.
Defendant's assignments of error are overruled. The judgment of the trial court is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ BETH WHITMORE
FOR THE COURT, BATCHELDER, P.J., BAIRD, J., CONCUR.
[1] In his brief, Defendant has referred to Patrolman Soto as the witness that the State recalled; however, the record indicates that Detective Rivera was the witness that the State recalled.