DECISION AND JUDGMENT ENTRY
Frank Davis appeals his conviction for operating a motor vehicle while under the influence of alcohol (OMVI), a violation of R.C. 4511.19(A)(1) and assigns the following errors:
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN ALLOWING OFFICER HURD TO TESTIFY THAT THE APPELLANT WAS UNDER THE INFLUENCE.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN FINDING THE DEFENDANT/APPELLANT GUILTY OF DRIVING UNDER THE INFLUENCE.
 I.
After his arrest for OMVI, Davis chose to proceed with a bench trial where he and the state trooper gave conflicting testimony. A brief summary of Trooper Hurd's testimony follows. We will refer to Davis's testimony under our analysis of his second assignment of error.
Trooper Gregory Hurd of the Ohio State Highway Patrol testified that he stopped Davis because his license plate light was out. After approaching Davis and informing him of the purpose for the stop, Trooper Hurd noticed a strong odor of alcohol, red and bloodshot eyes, and that Davis "swayed" when he got out of his vehicle. Davis accompanied Trooper Hurd to the patrol car, where Hurd now noticed a "very strong" odor of alcohol. According to Hurd, Davis then admitted to consuming two or three beers. Hurd also testified that he conducted a horizontal gaze nystagmus[1]
(HGN) test, which revealed the maximum six clues. Hurd testified that when Davis stood for the HGN test, he swayed again. Trooper Hurd offered to conduct the walk- and-turn, one leg stand, and breathalyzer tests but Davis refused to take them. Hurd then arrested Davis for OMVI. The Jackson County Municipal Court found Davis guilty of OMVI in violation of R.C. 4511.19(A)(1).
 II.
In his first assignment of error, Davis argues that the trial court committed prejudicial error by allowing Trooper Hurd to testify that Davis was under the influence of alcohol. Specifically, Davis contends that because the results of the HGN test were not admissible, Trooper Hurd had no basis or foundation for his opinion that the appellant was impaired. Thus, Davis submits that the trial court erred in admitting this opinion testimony. We generally review a trial court's rulings on the admissibility of evidence under an abuse of discretion standard of review. State v. Sage (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus. An abuse of discretion is more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Rock v. Cabral (1993), 67 Ohio St.3d 108,112, 616 N.E.2d 218, 222.
HGN tests can be a reliable field sobriety test for identifying intoxicated drivers. State v. Bresson (1990), 51 Ohio St.3d 123, 125,554 N.E.2d 1330, 1332. However, the reliability of these tests "depends largely upon the care with which they are administered." State v. Homan
(2000), 89 Ohio St.3d 421, 425, 732 N.E.2d 952, 956. Therefore, as a foundational prerequisite to admissibility, the state must show that the officer administering the test is properly trained to do so and that the officer followed the proper procedure in administering it. Bresson,51 Ohio St.3d at 128. Moreover, the officer must administer field sobriety tests in strict compliance with standardized procedures. Homan,89 Ohio St.3d 421, paragraph one of the syllabus.
Here, Trooper Hurd simply testified that he administered the HGN test and received the maximum, six out of six clues. Hurd then stated that this indicated a "high level of intoxication." The state did not present a sufficient foundation for the admission of the HGN test because there was no testimony regarding Trooper Hurd's training and ability to administer the test. Furthermore, there was no testimony regarding the actual techniques that Trooper Hurd used when he administered the HGN test to Davis. Thus, the trial court should have sustained Davis's objection to testimony concerning the results of the HGN test.
However, the trial court did not abuse its discretion in admitting Trooper Hurd's opinion that Davis was intoxicated. Under Evidence Rule 701, a non-expert[2] witness may express an opinion when it is "rationally based on the perception of the witness" and "helpful to a clear understanding of his testimony or the determination of a fact in issue." See City of Logan v.
 Randolph (May 10, 1999), Hocking App. No. 98CA18, unreported (holding that under Evid.R. 701, a police officer may give opinion evidence on the issue of intoxication). See, also, State v. Wargo (Oct. 31, 1997), Trumbull App. No. 96-T-5528, unreported (stating that "sobriety or lack thereof is commonly recognized by courts to be within the perception of a lay witness."). But, even a lay person's opinion concerning impairment requires a foundation, i.e. testimony that the witness has previous experience observing intoxicated people. Wargo, supra.
Here, Trooper Hurd testified that he has been a member of the Ohio State Highway Patrol since 1992 and during that time has "come in contact with" several hundred people who were intoxicated. Hurd then testified that he observed Davis swaying twice, a "very strong" odor of alcohol, red and bloodshot eyes, and that Davis admitted that he had consumed two or three beers. Therefore, even though the HGN test results were not admissible and could not form the basis for Hurd's opinion, the state introduced other evidence that properly served as the basis for Hurd's testimony. Davis's first assignment of error is overruled.
 III.
We construe Davis's second assignment of error as arguing that his OMVI conviction is against both the sufficiency and the weight of the evidence.
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. We must inquire whether the evidence, if viewed in the light most favorable to the prosecution, could convince any rational trier of fact that the essential elements of the crime were proven beyond a reasonable doubt. Id. citing Jackson v. Virginia (1979),443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
Davis was convicted of OMVI, a violation of R.C. 4511.19(A)(1), which provides that "no person shall operate any vehicle * * * [while] under the influence of alcohol." In order to carry its burden, the state must prove beyond a reasonable doubt that Davis consumed alcohol and that his driving was impaired or that his ability to drive was impaired. State v.Dorf (June 30, 1993), Wood App. No. 92-WD-059, unreported. The statute does not require the state to prove actual impaired driving. State v.Burdick (May 26, 2000), Geauga App. No. 98-G-2209, unreported. Instead, the state only needs to show impaired driving ability. Id. In order to prove that a person's physical or mental ability to drive is impaired, the state may rely on factors such as odor of alcohol, bloodshot or glassy eyes, slurred speech, and the failure to pass field sobriety tests. Id. See, also, State v. Dorf (June 30, 1993), Wood App. No. 92-WD-059, unreported (stating that the defendant's driving does not have to be erratic or in violation of a traffic law. "Rather, the effect of the alcohol and/or drugs must be to adversely affect a defendant's actions, reactions, conduct, movements or mental process, or to impair his reactions, under the circumstances then existing, so as to deprive him of that clearness of the intellect and control of himself which he would otherwise possess.").
Here, Trooper Hurd testified that he detected a "very strong" odor of alcohol when he had Davis in his patrol car and that Davis admitted to drinking two or three beers. Trooper Hurd also testified that he observed that Davis's eyes were red and bloodshot and that Davis swayed twice. When this evidence is viewed in the light most favorable to the prosecution, a rational trier of fact could conclude that Davis had consumed alcohol and that it impaired his driving ability.
Even though there is sufficient evidence to support Davis's OMVI conviction, we must still decide whether his conviction is against the weight of the evidence. State v. Banks (1992), 78 Ohio App.3d 206, 214,604 N.E.2d 219, 224. The legal concepts of sufficiency and weight of the evidence are different. State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541, paragraph two of the syllabus. The sufficiency of the evidence refers to the legal standard that is applied to determine if the case can, or should, go to the jury. Id. at 386. "Weight of the evidence concerns `the inclination of the greater amount of credible evidence.'"Id. at 387.
When considering Davis's claim that his conviction is against the weight of the evidence, our role is to determine whether the evidence produced at trial "attains the high degree of probative force and certainty required of a criminal conviction." State v. Getsy (1998),84 Ohio St.3d 180, 193, 702 N.E.2d 866. In effect, we sit as a "thirteenth juror." State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541. Thus, we must examine the entire record, weigh the evidence, consider the credibility of witnesses, and resolve any conflicts in the evidence. Thompkins, 78 Ohio St.3d at 387. However, we are mindful that generally, credibility is an issue for the trier of fact to resolve. State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. Thus, we can reverse Davis's conviction only if it appears that the court, acting as the fact finder, "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." Thompkins, 78 Ohio St.3d at 387. We may not reverse the conviction if there is substantial, competent, and credible evidence going to all essential elements of the crime of OMVI. Id.
The record contains evidence that Trooper Hurd observed Davis swaying on two different occasions; first, when Davis exited his own car and then when he stood in front of Hurd's patrol car for the HGN test. In addition, Hurd observed Davis's red and bloodshot eyes and detected a "very strong" odor of alcohol. Lastly, Trooper Hurd testified that Davis admitted to consuming two or three beers. This amounts to substantial, competent, and credible evidence that Davis consumed alcohol. While it may appear that the only evidence to show impaired driving ability is that Hurd observed Davis swaying on two different occasions, that is not the case. The court could have relied on factors such as odor of alcohol and bloodshot or glassy eyes to support their belief that Davis's driving ability was impaired. State v. Burdick (May 26, 2000), Geauga App. No. 98-G- 2209, unreported; State v. Dorf (June 30, 1993), Wood App. No. 92-WD-059, unreported. While the evidence is not overwhelming, nevertheless, we find there is substantial, competent, and credible evidence that supports the court's finding that Davis's driving ability was impaired.
Davis argues that he presented overwhelming evidence that he had nothing to drink and that he was not impaired. Davis presented testimony from three people who testified that they were in his company in the hours before his arrest. Barbara Burchett, Davis's sister-in-law, testified that she worked with Davis until 7:00 p.m. and that she did not observe him drink any alcohol. Steve Hughes, a friend of Davis's, met him at a local bar called "The Swamps" so that Davis could show Hughes his new dog. Hughes testified that even though he met Davis at the bar, he did not see Davis drink anything that evening. Deborah Huertez, a waitress at "The Swamps," testified that she did not serve any alcohol to Davis that evening. In addition, none of these witnesses observed Davis swaying. Lastly, Davis testified on his own behalf. Davis testified that he had nothing to drink that day. Furthermore, he denied that he admitted to Trooper Hurd that he drank two or three beers. Davis attributed the alleged swaying to his muddy and inclined driveway. He attributed the odor of alcohol to the paint he used in the body shop. Lastly, Davis stated that he refused to cooperate with Trooper Hurd because Hurd upset him by threatening to shoot his dog.
After reviewing the record we cannot say that the trial court "clearly lost its way" and created a "manifest miscarriage of justice." The trial court was faced with two conflicting versions of the night's events. Obviously, the court found the trooper to be a credible witness. That decision to favor one version of the events over the other does not amount to a fact finder clearly losing its way. Therefore, Davis's second assignment of error is overruled.
 IV.
We find no error in the Jackson County Municipal Court's decision allowing Trooper Hurd to testify regarding Davis's impairment. In addition, we find that the state presented sufficient evidence to support the conviction. Lastly, Davis's OMVI conviction was not against the weight of the evidence. Therefore, both of Davis's assignments of error are overruled and his conviction is affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Jackson County Municipal Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. Evans, J.: Concur in Judgment and Opinion.
[1] HGN refers to the jerking of the eyes as they look, or gaze to one side. In administering the test, officers are trained to observe the suspect's eyes in order to determine the angle in which the jerking occurs, whether the jerking is distinct, and whether the eyes smoothly follow an object, usually a pen. State v. Bresson (1990),51 Ohio St.3d 123, fn. 1, 554 N.E.2d 1330, citing 1 Erwin, Defense of Drunk Driving Cases (3 ed. 1989), Section 8.26. See, also, State v.Ousley (Sept. 20, 1999), Ross App. No. 99CA2476, unreported, fn. 1.
[2] If the law enforcement officer is properly qualified, the officer can also testify regarding the issue of intoxication/impairment as an expert under Evid.R. 702. State v. Fettro (Dec. 8, 1987), Highland App. No. 617, unreported.